## MALONE v. REPUBLIC NAT. BANK & TRUST CO.

### No. 11442.

Court of Civil Appeals of Texas. Dallas. March 24, 1934.

Rehearing Denied April 28, 1934.

Webster Atwell, of Dallas, for appellant.

Herbert W. Whisenant and T. B. Reese, both of Dallas, for appellee.

LOONEY, Justice.

A. M. Malone, as trustee of the bankrupt estate of the Farr & Walton Furniture Company, a corporation, sued the Republic National Bank & Trust Company to recover $4,185.67 and interest, the amount the bankrupt paid defendant for a note held by it against D. D. Farr, president of the company. The trustee based his right to recover on the theory that, the purchase of the note by the directors of the company being ultra vires and void, defendant bank was obligated to repay the company the amount received; hence, as trustee in bankruptcy, plaintiff was entitled to assert the cause of action.

The defendant bank answered by general denial and a special plea, to the effect that, prior to being adjudged a bankrupt, the furniture company had estopped itself to insist upon the doctrine of ultra vires in avoidance of the note transaction. On trial without a jury, the court sustained the plea of estoppel and denied plaintiff recovery, from which he appealed.

The facts are undisputed. The Farr & Walton Furniture Company was authorized to purchase and sell goods, wares, and merchandise; prior to the note transaction was solvent, had a surplus of earnings, and its credit was good; did its regular banking with defendant, and, at the time, was indebted to it in the sum of $6,000, which (together with any additional indebtedness) was secured by pledge of the company's bills and notes receivable, amounting to $25,000. On September 30, 1930, the company purchased the Farr note and borrowed from the bank an additional $4,000 (automatically secured by the pledge) to pay for same. At that time, the directors of the company were D. D. Farr, president, C. O. Walton, vice president and treasurer, and C. D. Turner, secretary; these also constituted all stockholders save one, a Mr. Jones.

For several years prior to September 30, 1930, D. D. Farr had been indebted to defendant bank in the sum of $4,000, evidenced by note secured by a pledge of 135 shares of the Farr & Walton Furniture Company stock; this indebtedness had been renewed and extended from time to time; the last extension was on June 20, 1930, for 90 days.

Notwithstanding the bank considered the Farr note well secured and a perfectly safe investment, yet its continued and continuing existence caused impatience, the bank officials insisted mildly that the note either be paid or taken up and carried by the company. At the time there was a demand for the stock of the company, the pledged stock could have been sold and the amount of the note realized, but, for business reasons, sale of the pledged stock was objectionable to the directors. Farr was without ready money and unable to pay the note, unless paid dividends on the stock he owned in the company; but also for business reasons the directors were unwilling to pay dividends at that time, in lieu they unanimously decided to borrow the necessary amount from the bank, take up the Farr note, carry it as an asset of the company, and control the ownership of the pledged stock; so the business was managed in that way, and, on September 30, 1930, Mr. Walton, vice president and treasurer, drew the company's check in favor of the bank for $4,185.67, the bank indorsed the Farr note without recourse, transferring same to the furniture company. After purchasing the note, the furniture company held matters in status quo, and, prior to being adjudged a bankrupt, made no effort to collect or realize on the collateral. At the time of the adjudication (March 26, 1932), the stock pledged as security for the Farr note was worthless, and the note, although scheduled as an asset of the bankrupt estate, was not collectible.

The court concluded, as a matter of law, that the act of the directors of the furniture company in purchasing the Farr note was ultra vires, but it, being an executed transaction, was voidable merely and not void; that the company had realized therefrom a material benefit, in that the collateral was worth $13,500, could have been sold and the note collected at any time, but, the company failing to take that course, and in the meantime the pledged stock becoming worthless, it was estopped to set up the ultra vires nature of the act in avoidance of the note transaction, and that plaintiff, trustee in bankruptcy, was bound by the estoppel.

We agree to the result, but are not prepared to accept as correct the conclusion of the trial judge, that under the circumstances the use by the directors of corporate funds to purchase the Farr note was ultra vires; but, if so, we readily agree that the court was correct in sustaining the plea of estoppel.

■ An ultra vires act is defined as one beyond the scope either of the express or implied powers of the corporation; an intra vires act, on the contrary, is defined as one within the scope either of its express or implied authority. Implied powers are not limited to those merely necessary, but include

such as are appropriate, convenient, and suitable in carrying out the express purposes of the corporation. Exigencies in regard to the internal management and business policies of a corporation may suddenly arise, cannot at all times be anticipated, but, appearing, must be so dealt with as to promote the purposes for which the corporation was organized.

After reviewing a variety of cases illustrating the exercise of implied powers by corporations, Cook, in his work on that subject, volume 3 (7th Ed.) § 681, pp. 2239, 2242, makes the following announcement. "First, there is no clearly defined principle of law that determines whether a particular act is ultra vires or intra vires. The courts are becoming more liberal, and many acts which fifty years ago would have been held to be ultra vires would now be held to be intra vires. The courts have gradually enlarged the implied powers of ordinary corporations, until now such corporations may do almost anything that an individual may do, provided the state and the stockholders and creditors do not object. * * * So, also, an action by the corporation itself, or by the party contracted with, to repudiate an ultra vires act is not favored by the courts. Such an action is an attempt by a party to evade the contract by means of principles of law which both parties have violated or waived the benefit of. The court is not swift to grant relief in such cases." Pages 2248–2250.

In the instant case the directors of the company were confronted with this situation: The bank was insistent that the Farr note either be paid or taken up and carried by the company, and Farr was unable to pay, unless he received from the company dividends on the stock owned by him. For business reasons, the directors wished to control ownership of the Farr stock pledged as security and at the same time avoid payment of dividends which, to that extent, would have decreased the working capital of the company; so, in this situation, the directors decided to purchase the Farr note, borrow from the bank necessary amount to pay for same, and carry the note as an asset of the company.

As the purchase of the note was an isolated transaction, designed to promote the best interest and further the purposes of the corporation, we think the directors · acted within the scope of their implied managerial powers, and for this reason are of opinion that the judgment, denying plaintiff recovery, is correct.

However, if, as held by the trial court, the act of the directors, in purchasing the Farr note, was ultra vires, we are of opinion that its holding in favor of defendant on the issue of estoppel was correct, and that for this reason the judgment should be affirmed.

The facts bearing upon the issue of estoppel justify the conclusions that, in the sale and purchase of the Farr note, the parties were conversant with the situation and the reasons actuating each; no deception was indulged by either as an inducement; each relied upon the good faith and the validity of the act of the other, and each received the benefit sought, i. e., the bank was rid of a somewhat frozen, though well-secured, asset, and began realizing on the debt in another form; the furniture company was enabled to control ownership of the collateral, and, by avoiding payment of dividends, held intact its working capital; these being the goals desired, respectively.

In Texas W. Railway Co. v. Gentry, 69 Tex. 632, 8 S. W. 98, 102, Judge Gaines, speaking for the Supreme Court, said: "There is some conflict among the authorities upon the question of the validity of the contract of a corporation, when made in excess of its powers. When the contract is executed, and the corporation has received the benefit, the weight of authority seems to be that the corporation should be held estopped to deny its authority to make it. (Citing numerous authorities.) The rule is correctly stated in a recent work on estoppel [2 Hermst. Est. § 1179]: 'Where a contract has in good faith been fully performed, and nothing remains to be done by *. * * the party seeking relief, and all the stockholders have acquiesced in its performance, the plea of ultra vires, or mere want of power, is not available by the corporation in an action brought against it for not performing its portion of the contract."

A case somewhat similar to the one under consideration was dealt with by the Supreme Court in Gaston v. Campbell Co., 104 Tex. 576, 140 S. W. 770, 773, 141 S. W. 515. After stating the general rule, to the effect that it is ultra vires for a commercial corporation to execute accommodation paper or guarantee payment of the obligation of another, Judge Ramsey used the following language in point: "An indorsement of this character, however, is not malum in se, is not prohibit-

ed by statute, and is not beyond the general scope of the powers of such a corporation. It is merely an excessive exercise of one of those powers, an excessive exercise of the power which it has, in proper cases, to make and indorse commercial paper. Where such an indorsement has been apparently made for the benefit of the corporation, and has been in fact made partly for its own benefit and partly for the accommodation of another, and the corporation has received and retained the benefits of the indorsement, the contract is not void, because it is no defense for a private corporation against the enforcement of an executed contract whose benefits it holds that, while its execution was within the general scope of its powers, it involved an excessive exercise of one of them. While such a corporation retains the benefits of such a contract, it silently affirms, and must not be permitted to deny its validity"—citing numerous authorities.

But, to our minds, the most potent element of estoppel presented is the indisputable fact that the bank will suffer an irreparable loss if estoppel is not declared.

In 3 Story's Equity Jurisprudence (14th Ed.) § 1989, p. 569, it is said: "An equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise exist as against another person who has in good faith relied upon such conduct, and has been thereby led to change his position for the worse, and who, on his part, acquires some corresponding rights. The doctrine is founded upon equity and good conscience; and the party claiming the estoppel must have done something, or in some way changed his position for the worse, so that he will not be left, or cannot be put back, in his former condition, in case the other party is allowed to assert his original rights. * * *"

The same doctrine is set forth in 10 R. C. L. § 19, p. 689, in the following language: "* * * If a man by his statements or behavior leads another to do something which he would not have done but for the expression of that language or the exhibition of such behavior, such first man shall not be allowed to deny his utterance or act to the loss, injury or damage of the other one."

The same doctrine was announced by Judge Dunklin in Kuykendall v. Spiller (Tex. Civ. App.) 299 S. W. 522, 527, in the following language: "An estoppel cannot be invoked as an instrumentality of gain or profit;

it can operate only to protect the person invoking it in a right which he has already acquired and which he would lose unless the party against whom it is urged is prevented from asserting a conflicting right which would be superior to that of the person invoking the estoppel."

We think the instant case within the doctrine announced in the authorities cited. At the time the bank sold the note, the collateral was worth $13,500, more than three times the amount due upon the note. The furniture company could have realized upon the collateral and collected its debt at any time, but failed to pursue that course, neither did it offer to return the note and collateral, nor did it urge any objection to the transaction, but, serving its own purposes, held the note and collateral until adjudged a voluntary bankrupt, at which time Farr was without assets and the collateral worthless; so it is obvious that, should the plea of estoppel be denied, the status quo cannot be re-established. For reasons stated, the judgment of the court below is affirmed.

Affirmed.