WICKSTRAND *v.* NELSON.

KYSELKA *v.* SAME.

1. PRINCIPAL AND AGENT—BROKERS—CORPORATIONS.

In action against an individual and subsidiary company of a parent corporation for fraud in the sale of latter's stock, fact that the individual was an agent of stockbroker having exclusive sale of the stock *held*, not to prevent his being agent of defendant subsidiary which was actively engaged in promoting sale of the stock, held its employees out to the public as authorized to make or aid sales and authorized them to do so as part of the company business.

2. FRAUD—SALE OF CORPORATE STOCK—ESTOPPEL—EVIDENCE.

Public utility company, sued in action for damages for fraud in sale of stock of parent holding corporation, *held*, estopped to deny knowledge of, or implied authority in, local manager's activities in connection with sales where his superior officers suggested he assist other employees in the stock selling campaign, advertisements extending over a period of a year were paid for by the company and there is no evidence that the officers did not have actual knowledge of his activities.

3. CORPORATIONS—PRINCIPAL AND AGENT.

Company which has taken benefits from sale of stock of its parent corporation cannot escape burden of its agent's acts.

4. SAME—DEFENSE OF ULTRA VIRES—FRAUD.

In action for damages for fraud, brought against public utility company and its agent, incident to sale of stock of parent holding company, corporate defendant cannot raise defense of *ultra vires* (Act No. 327, § 11, Pub. Acts 1931).

5. LICENSES—BLUE SKY LAW—PURPOSE OF ACT.

Purpose of act to regulate issuance and sale of securities (blue sky law), is to prevent fraud, deception and imposition on purchasers of securities (2 Comp. Laws 1929, § 9771).

6. EVIDENCE—FRAUD—SALE OF SECURITIES.

Whether a securities salesman has a license or not is not a matter evidencing fraud in their sale.

7. LICENSES—BLUE SKY LAW—EXCLUSIVE CIVIL REMEDY.

In action to recover purchase price of stock which had been accepted for filing by the securities commission but sold to plaintiff by an unlicensed salesman, the blue sky law's provision that such an action be commenced within two years from date of sale *held*, controlling as against plaintiff's contention that common law right of rescission was open to him for period of six years (Comp. Laws 1929, §§ 9788, 13976).

POTTER, C. J., and WIEST and BUTZEL, JJ., dissenting in part.

Appeal from Grand Traverse; Gilbert (Parm C.), J. Submitted June 6, 1935. (Docket No. 53, Calendar No. 38,401.) Decided November 12, 1935.

Separate actions by David Wickstrand and wife and Otto Kyselka against Helmer Nelson and Michigan Fuel & Light Company, a Michigan corporation, based on rescission of purchase of corporate stock. Judgments for plaintiffs. Defendant Michigan Fuel & Light Company appeals. Affirmed as to plaintiffs Wickstrand. Reversed as to plaintiff Kyselka.

*Mathews & Murchie,* for plaintiffs.

*Ross H. Lamb (Dickinson, Smith, Farrell & Wham, of counsel), for defendant Michigan Fuel and Light Company.*

FEAD, J. The fact that Nelson was agent of Albert E. Pierce & Company did not prevent his being also agent of defendant Michigan Fuel & Light Company in selling the stock. The company was actively and energetically promoting sale of the stock to its customers and the public, not only to aid its parent in obtaining money but also to create a local good will interest in itself. Its advertisement urged purchase of "our stock" and referred the public to itself, Pierce & Company, or "our employees" for information. It received checks in payment of stock, in-

dorsed and cashed them, and remitted by its own check. While Nelson and the local manager, Eva, sought to minimize the company's participation in the campaign of sale, to "permitting" meetings to be held at its office to instruct its employees how to sell stock and merely "suggesting" that the employees sell stock for Pierce & Company, the fact is, that the employees solicited sales in connection with their usual duties for the company during their ordinary working hours paid for by the company, and they took time from their company routine to complete sales. Giving actions their proper dominance over mere words, it is clear that the company not only held its employees out to the public to make or aid in sales but actually authorized them to do so as part of the company business.

But, it is claimed, Eva had no authority to aid in the sales campaign on behalf of the company because he had not been so empowered by the board of directors. I think he had at least implied authority. He was local manager, doing acts for the benefit of his company, and his superior officers had "suggested" that he assist the employees in the stock selling campaign. The advertisements extended over a period of a year and were paid for by the company. There is no evidence that the officers did not have actual knowledge of the activities of Eva and the employees. They were charged with knowledge of the long extended campaign, particularly as their records showed the company paid for it; and they cannot claim ignorance of activities set in motion by their "suggestion" to the local manager. Having taken the benefits, the company cannot escape the burden of its agent's acts.

The defense that the sale of stock is *ultra vires* the corporation and could not be authorized even by

the board of directors is not tenable. In this action the corporation cannot raise the plea of *ultra vires.* Act No. 327, § 11, Pub. Acts 1931; *Wardowski* v. *Guardian Trust Co. of Detroit,* 262 Mich. 422.

Defendant light company is liable for the fraud of its agent Nelson and the judgment for plaintiffs Wickstrand is affirmed, with costs.

The case of plaintiff Kyselka is different. The charge of fraud made in his declaration was withdrawn. The ground of his recovery was that the sale to him was in violation of the blue sky law, 2 Comp. Laws 1929, § 9769 *et seq.*

Plaintiff rests upon the proposition that as defendants were not licensed as dealers or salesmen under the blue sky law, and the act provides criminal penalties against unlicensed persons for making sales, the common law renders such transaction void and rescission open to the purchaser.

This principle was applied under the original law,[*] which did not provide a civil remedy, to avoid sales of unaccepted securities. No case involving sale of accepted securities by unlicensed salesmen or dealers seems to have arisen.

The present act, 2 Comp. Laws 1929, § 9788, provides that any sale or contract for sale of any security "not accepted for filing under this act or made contrary to any order of the commission" shall be voidable at the election of the purchaser, who may rescind within two years from the date of the sale.

Plaintiff claims this leaves the common law right of rescission open as to sale by unlicensed persons. This would produce the anomalous situation of a purchaser of unaccepted securities from a licensed salesman being required to rescind within two years,

---

[*] See 3 Comp. Laws 1915, § 11945 *et seq.,* as amended by Act No. 404, Pub. Acts 1921.—REPORTER.

while he would have six years * in which to rescind
if the sale were of accepted securities by an un-
licensed salesman.   The purpose of the act is to
prevent fraud, deception and imposition on pur-
chasers of securities. 2 Comp. Laws 1929, § 9771.
The principal weapon against fraud is the require-
ment of acceptance of securities for registration
by the State.   No fraud can arise merely from the
fact of whether a salesman has a license.   The object
of section 9788 was to provide a single definite civil
remedy to be exercised under specific conditions.
The legislature cannot be held to have intended to
accord a purchaser greater privilege to rescind for a
subordinate and nonfraudulent act than he would
have to set aside a sale for violation of the dominat-
ing provision against fraud.   We think section 9788
was designed to provide an exclusive civil remedy.
*Barth* v. *Klicpera,* 248 Mich. 460.

Judgment in favor of Kyselka against defendant
Michigan Fuel & Light Company is reversed, with
costs, and without new trial.

NORTH, BUSHNELL, and EDWARD M. SHARPE, JJ.,
concurred with FEAD, J.

WIEST, J. (*dissenting in part*).   This opinion is in
the Wickstrand case but applies as well to the Ky-
selka case.

This is an appeal by defendant Michigan Fuel &
Light Company, a corporation, from a judgment
against it for false representations made by defend-
ant Helmer Nelson, one of its employees, inducing
plaintiffs to purchase shares of stock in the Amer-
ican Commonwealth Power Corporation of Dela-
ware.   Mr. Nelson's liability is not here questioned.

The alleged false representation was, in substance,
that the American Commonwealth Power Corpora-
tion owned and operated the Michigan Fuel & Light
Company and various other public utilities.

---

* General statute of limitations, 3 Comp. Laws 1929, § 13976.—
REPORTER.

The following statement of the relation between the two corporations is taken from the brief for plaintiffs:

"The association between the Michigan Fuel & Light Company and the American Commonwealth Power Corporation (of Delaware) in 1930 and 1931, was extremely remote, the facts being as follows:

"All of the common stock of the Michigan Fuel & Light Company, except directors' qualifying shares, was owned by the Interstate Fuel & Light Company, a Michigan corporation;

"All of the common stock of the Interstate Fuel & Light Company, except directors' qualifying shares, was owned by the American Commonwealth Power Corporation of Maryland;

"All of the common stock of the American Commonwealth Power Corporation of Maryland, except directors' qualifying shares, was owned by the American Commonwealth Power Corporation of Delaware, that being the company whose preferred stock is the basis of this suit."

The Delaware corporation was not owner of defendant company. The representation by Nelson was false in fact and law. Plaintiffs, upon learning of such falsity, tendered the purchased shares of stock to both defendants, rescinded and demanded return of moneys paid.

The pivotal question is whether the corporation can be held to respond for the tortious act of one of its employees outside of the scope of his employment, beyond the corporate powers and without corporate authorization or ratification. The answer is obvious, unless there is something taking the case out of general rules on the subject.

The modern tendency to depart from the rule of *ultra vires* in case of torts committed by corporate agents cannot go beyond liability to respond for tor-

tious acts committed in the course of agency. The modern rule applies the doctrine of *respondeat superior* and requires a showing that the tort was not only by an agent but committed as an agent and not wholly apart from his employment. In other words the servant must be working for the master and, while so working, commits a tort.

As said in 10 Fletcher, Cyclopedia of Corporations (Perm. Ed.), § 4877:

"As a general rule, however, a corporation is no more liable than a natural person would be for torts not within the scope of the authority of its officers, agents or servants and committed by them outside of the course of their employment, unless it has expressly authorized or has ratified the same; and it can make no difference whether the officer, agent or servant undertakes to act for the corporation in a matter which is beyond his authority, or acts for himself." Citing, among other cases, *Preston* v. *Marquette County Savings Bank,* 122 Mich. 696, and *Washington Gas Light Co.* v. *Lansden,* 172 U. S. 534 (19 Sup. Ct. 296).

The evidence discloses that the stock of the American Commonwealth Power Corporation was accepted for filing by the Michigan securities commission in 1930 and 1931, and that corporation offered its preferred stock and Albert E. Pierce & Company, brokers, had the exclusive sale thereof.

Agents of such brokers visited Traverse City and solicited employees of defendant company to make sales of the stock, upon commission from the brokers, and the local manager who was not an officer or director of defendant company, granted employees such permission. Mr. Nelson was an employee of defendant company and his work, as a collector and meter reader, brought him in contact with plaintiffs and, to earn a commission from the Pierce Company,

he induced plaintiffs to purchase the shares of stock here involved. To pay for the first purchase a bank cashier's check was obtained by and indorsed by plaintiff Carolina Wickstrand and a receipt given, signed "Albert E. Pierce & Company. Helmer Nelson." This check did not come into the possession of defendant company.

Two other purchases were made by plaintiffs and Mr. Nelson accepted like cashier checks and gave receipts as in the first instance. The two last cashier checks, indorsed by Mrs. Wickstrand, were turned over by Nelson to defendant company, to be transmitted to Pierce & Company, and were indorsed by defendant company and so sent and Nelson received his commission from Pierce & Company.

The local manager of defendant company gave employees of the company permission to engage in selling stock, enabled a representative of Pierce & Company to meet with and instruct the employees relative to sales, installed a rocking signboard in front of the office, advertising sale of the stock and the company trucks and office window carried the printing: "Associated with American Commonwealth Power Corporation," also advertisements were inserted in the local newspaper by the manager, such as:

"Don't overlook the American Commonwealth Power Preferred Stock, paying 6½%.
"The Traverse City Gas Company
"Phone 210.
"A part of the American Commonwealth Power Corporation of New York."

None of such advertisements, however, induced plaintiffs to purchase the stock, for they relied upon the representation made by Mr. Nelson.

Does the case at bar fall within the following rule stated in 10 Fletcher, Cyclopedia of Corporations (Perm. Ed.), § 4886?

"But an officer or agent of a corporation may take advantage of his position to perpetrate a fraud upon third persons, acting, not for the corporation, but for his own benefit, and in violation of his duty to the corporation. In such a case he certainly does not act in the course of his employment, but he may act in the apparent course of his employment, and thus deceive the other party."

In such case, by the weight of authority, the corporation is estopped from denying liability. The stated doctrine implies, however, departure by the agent from furtherance of the master's business, and employment of his position and apparent authority to perpetrate a fraud upon a third person.

Defendant is not liable to respond for a fraud perpetrated by Nelson in his endeavor to earn a commission from Pierce & Company.

In so holding we have not only considered the particular representation made by him to plaintiffs and relied upon by them, but as well the activities of other agents of the corporation, inclusive of the manager, in endeavors to induce purchases of the stock.

The evidence discloses no corporate action by directors or officers of the company.

The judgments should be reversed, without a new trial, as to defendant corporation, with costs to it to be taxed.

POTTER, C. J., and BUTZEL, J., concurred with WIEST, J.

The late Justice NELSON SHARPE took no part in this decision.