Strauss *v.* W. H. Strauss & Company, Inc.,
Appellant.

Argued January 4, 1938. Before Kephart, C. J.,
Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*Philip N. Shettig,* of *Shettig & Swope,* with him *Hare & Hare,* for appellant.

*William H. Burd* and *Morton Myers,* for appellee.

OPINION BY MR. JUSTICE BARNES, May 9, 1938:

According to an agreed statement of facts in the record, the defendant, W. H. Strauss & Company, Inc., a Pennsylvania business corporation, was engaged in the wholesale tobacco business, with its offices at Johnstown and Altoona. It became insolvent, and receivers were appointed by the Court of Common Pleas of Cambria County on June 5, 1934. The receivers liquidated the assets of the corporation, and their account was before the court below for audit. The account shows a fund on hand for distribution among its creditors.

At the audit the Altoona Trust Company presented for allowance the note of J. F. Kauffman, dated March 12, 1934, in the face amount of $9,000. The instrument is in the form of a judgment note, of which W. H. Strauss & Company, Inc., is named as payee, and which also bears the endorsement of the corporation by William H. Strauss, as president, and J. F. Kauffman as its secretary and treasurer, with the corporate seal affixed.

It appears from the testimony that on March 10, 1931, the Altoona Trust Company loaned to J. F. Kauffman the sum of $9,000. On that date there was delivered to the Trust Company a note which became the first of a series of renewals for ninety-day periods, ending with the present note of March 12, 1934. The original note and each renewal thereof were in the same form and had the same endorsement as the present one.

William H. Strauss and J. F. Kauffman were the officers and sole stockholders of the defendant corporation. The proceeds of the loan were paid by the Trust Company to J. F. Kauffman, and were used by him to pay off his personal obligation in the same amount at the Second National Bank of Altoona. He always paid the interest upon the note, and securities belonging to him were pledged with the Trust Company to secure the loan. W. H. Strauss & Company, Inc., received no benefit from the transaction, and its books of account contain no reference to its liability on the note. It is admitted that Kauffman is the principal debtor, and the defendant is merely the accommodation endorser upon the instrument.

Creditors of the defendant filed exceptions to the allowance of the Trust Company's claim, contending that the endorsement in question is ultra vires. After the taking of testimony, the court below held that the defense of ultra vires was available to defeat the claim of the Trust Company, and entered a decree sustaining the exceptions and disallowed the claim. From the final decree of the court below disallowing its claim the Altoona Trust Company has taken this appeal.

This Court has ruled that a manufacturing or trading corporation cannot divert its capital to a different purpose than that for which it was created, or risk it in lending its credit to others, by issuing or endorsing bills or notes as an accommodation, or guaranteeing another's obligations: *Globe Indemnity Co. v. McCullom*, 313 Pa. 135, 137; *Nat. Bank of Shamokin v. Waynesboro Knitting Co.*, 314 Pa. 365, 371, and cases therein cited. It is conceded that the defendant corporation in the present case neither received any consideration for its contract of endorsement, nor were any of the proceeds of the loan paid to it. The accommodation endorsement of the defendant company on the note of Kauffman was an ultra vires act.

However, Section 303-A of the Business Corporation Law (Act of May 5, 1933, P. L. 364, 380), provides: "No limitation upon the business, purpose or purposes, or powers of a business corporation, expressed or implied in its articles or implied by law, shall be asserted in order to defend any action at law or in equity between the corporation and a third person, or between a shareholder and a third person, involving any contract to which the corporation is a party or any right of property or any alleged liability of whatsoever nature; . . ."

Since this Act became effective, the defense of ultra vires can no longer be asserted by a corporation in an action involving a contract such as this one, to which it is a party. The present note was executed, endorsed and delivered upon March 12, 1934, subsequently to the effective date of the Act of 1933.[1] If this Act has application to the present case, then the defense of ultra vires is not here available to the corporation or its receivers, and the court below was in error when it permitted a defense upon that ground and refused to allow the claim of the Trust Company.

On behalf of the defendant corporation it is contended (a) that while the note was delivered subsequently to the effective date of the Act, it was in renewal of an obligation given prior to that time, and the transaction being ultra vires in its inception, when the defense was available, its character is not changed by the subsequent execution of a renewal note when such defense had been abolished by law; (b) that the "Saving Clause" contained in Section 5-A of the same Act (P. L. 371) preserves the right to assert the defense of ultra vires by the following language: "This act shall not impair or affect any act done, offense committed, or right accru-

---

[1] Section 1201 of the Act of 1933, P. L. 432, provides: "This Act shall become effective on the Third day of July, one thousand nine hundred and thirty-three."

ing, accrued or acquired, or liability, duty, obligation, penalty, judgment or punishment incurred prior to the time this act takes effect, but the same may be enjoyed, asserted, enforced, prosecuted, or inflicted as fully and to the same extent as if the act had not been passed"; (c) that the Act of 1933 does not apply to a case where the action is between contending creditors of the corporation, rather than between the corporation and a third party.

The court below, stressing the saving clause of the Act, reached the conclusion that the corporation might still assert the defense of ultra vires, notwithstanding the provisions of the Business Corporation Law. There can be no doubt that W. H. Strauss & Company, Inc., could have relied upon this clause and defended against any outstanding or earlier note, if the endorsement for accommodation had been made thereon prior to July 3, 1933. But when it deliberately endorsed the note after the effective date of the Act, it clearly elected to be bound by its provisions, and to submit to the limitation the Act imposes. The only outstanding contract of endorsement which the Altoona Trust Company holds or can now assert against the defendant corporation is the one contained upon the note dated March 12, 1934.[2] Upon the receipt of this note the claimant cancelled the last previous instrument bearing the defendant's endorsement, and extended the time for the payment of the debt.

Therefore the claim of the Trust Company is founded upon a distinct and independent contract of endorsement entered into by the corporation at a time when the defense of ultra vires had been abolished by law. The clear meaning and effect of the saving clause is to preserve existing rights and defenses against legislative

---

[2] The witness, J. H. Dillon, President of the Altoona Trust Company, testified that the Bank did not have in its possession the original note of March 10, 1931. He made no statement with respect to the renewal notes given from time to time.

death, and not to confer upon corporations immunity against obligations voluntarily undertaken in the future. We are of opinion that there is no merit in these two contentions of the defendant because of the waiver on its part of the right to rely upon the defense of ultra vires, when it executed the endorsement of March 12, 1934.

Our attention has been directed to the case of *Lincoln Deposit & Tr. Co. v. Sanker,* 305 Pa. 576, and the decisions cited therein. While it is true that the acceptance of a renewal note is presumed to be as collateral security for the original obligation rather than for its payment or discharge, we fail to see how this principle has any bearing upon the question before us.

As we have said, while the endorsements upon the original and renewal notes executed prior to the statutory date of July 3, 1933, were unquestionably ultra vires, the claim of the Trust Company is not upon any of the instruments evidencing such ultra vires acts, but is based solely upon an obligation created after the Act of 1933 became effective, and is subject to its terms.

The final contention on behalf of defendant is equally lacking in merit. It cannot be held that this is a contest between creditors of the corporation. The creditors who object to the claim of the Trust Company do not assert any independent right or defense of their own to defeat the claim of the Trust Company. The defense of ultra vires, if here available, could be asserted only by the corporation in its own right against this claimant.

We conclude that the court below erred when it sustained the exceptions to the claim of the Altoona Trust Company and disallowed the claim. The decree of the court below is reversed, and the record is remitted to the end that the claim of the Altoona Trust Company against W. H. Strauss & Company, Inc., be allowed, unless other legal or equitable cause be shown to the court below why such a decree should not be entered.

Decree reversed. Costs to be paid by appellee.