**REPUBLIC NATIONAL BANK OF DALLAS, Appellant,**

v.

**Bernard WHITTEN, Trustee, Appellee.**

**No. 16358.**

Court of Civil Appeals of Texas.

Dallas.

July 3, 1964.

Rehearing Denied Sept. 25, 1964.

Leachman, Gardere, Akin, Porter & De-Hay, Dallas, for appellant.

Wynne, Jaffe & Tinsley and Carl W. Wilson, Dallas, for appellee.

DIXON, Chief Justice.

Appellee Bernard Whitten, Trustee in Bankruptcy of TexMex Corporation, hereinafter called TexMex, sued Republic National Bank of Dallas, hereinafter called the Bank, alleging that the Bank had diverted corporate funds of TexMex to its own use prior to the latter's bankruptcy by requiring TexMex to pay a $65,000 personal note of Robert Yarber, President of TexMex, out of the proceeds of a $257,000 loan made by the Bank to TexMex.

Both appellant and appellee filed motions for summary judgment. Appellee's motion was sustained. Judgment was rendered against the Bank for $65,270.83 principal with interest at 6 percent from November 27, 1959.

## FACTS

The material facts, as established by affidavits and copies of documents, are undisputed.

TexMex was incorporated February 21, 1955 as a Texas corporation. On or about June 27, 1957 its charter was amended to include the power to accumulate and lend money and to sell and deal in notes and shares of stock.

On July 5, 1957 the stockholders voted to adopt the Texas Business Corporation Act.

On August 25, 1958 the Board of Directors of TexMex passed a resolution under the terms of which a depository account was established with the Bank in the name of TexMex. This resolution, a copy of which was filed with the Bank, included the following provisions:

(1) Withdrawals were authorized in the name of the company by the joint signatures of Yarber and Cozine, officers of the corporation.

(2) Yarber and Cozine were authorized to borrow money from the Bank and give therefor the company's notes in such amounts for such time and at such interest rates as might be designated in the notes and might pledge for the payment of said notes any of the company's bills receivable, stocks, bonds, or other property.

(3) The Bank was authorized to honor all withdrawals against the company's funds although payable to the officer or agent signing or countersigning the same, whether presented for cash or for credit to the personal account of said officer or agent or any other person without the need of any inquiry by the Bank concerning such items or the disposition of the money, items or credit.

(4) The certification to the resolution named the officers of the company and those authorized to sign as Robert A. Yarber, President, Robert M. Cozine, Secretary and Robert M. Cozine, Treas-, urer. The record shows that Cozine later also held the office of Executive Vice-President.

On September 11, 1958 Yarber executed and delivered to the Bank a letter in which he unconditionally guaranteed payment to the Bank of all indebtedness of TexMex present and future.

On October 24, 1958 Yarber was indebted to the Bank upon his personal note in the sum of $75,000. Yarber's note was secured by 37,500 shares of common stock of Tex-Mex. As additional security TexMex had given the Bank a letter, signed by Yarber as President and Robert M. Cozine as Executive Vice-President, whereby TexMex agreed to purchase the 37,500 shares of stock at a price of $2 per share if called on to do so during the term of the loan. At the time the stock was quoted "over the counter" at a price of $1.50 bid and $1.75 asked.

On November 24, 1959 TexMex owed the Bank $329,187.50; Peoples' Realty Company, a wholly owned subsidiary of Tex-Mex, owed the Bank $97,500; and Yarber owed a balance of $65,270.83 on his personal note. At various times prior to the last named date officers of TexMex had talked with officials of the Bank with regard to the Bank's lending an additional sum of $257,-000, which would have made a total indebtedness of TexMex to the Bank of $586,687.-50. The Bank was unwilling to make this additional loan except on certain terms and conditions which will be hereinafter stated.

On November 24, 1959 the Board of Directors of TexMex by resolution authorized the officers of TexMex to execute the corporation's note for $257,000 and to assign to the Bank as security two second lien notes of $600,000 and $80,000 respectively together with an agreement subordinating other notes held by TexMex to the above two notes.

The Bank refused to make the additional loan of $257,000 unless the balance of approximately $65,000 on Yarber's note be

paid out of the proceeds of the $257,000 additional loan.

On November 27, 1959 the Bank agreed to make and did make the additional loan of $257,000 upon certain terms and conditions, all of which were carried out and completely executed by the Bank, TexMex and Yarber. The transaction was as follows:

(1) The Bank made the additional loan of $257,000 to TexMex, secured as will hereinafter be explained.

(2) TexMex paid the balance of $65,270.83 due on Yarber's note. The Bank marked Yarber's note "Paid" and surrendered the note so marked to TexMex together with the 37,500 shares of TexMex stock securing the note and the letter whereby TexMex had agreed to buy the stock at $2 per share.

(3) Yarber executed a new note payable to TexMex for the $65,270.83 which TexMex had expended in paying Yarber's note to the Bank. Yarber also assigned to TexMex the 37,500 shares of stock as security for the new note.

(4) TexMex paid the $97,500 note of Peoples' Realty Corporation, the wholly owned subsidiary of TexMex.

(5) The $257,000 note of TexMex was secured (a) by assignment to the Bank as a pledge of the $600,000 and $80,000 second lien notes, together with the subordination agreement in regard to said notes, and (b) by assignment to the Bank as a pledge of Yarber's note for $65,270.83, which was itself secured by Yarber's 37,500 shares of TexMex stock.

(6) TexMex used $73,800 of the loan money to pay various of its creditors who need not be listed here.

(7) After making the above payments TexMex had left the sum of $21,200 out of the $257,000 loan, which sum remained in its bank account subject to withdrawal by check.

On December 4, 1959 the Board of Directors of TexMex adopted a resolution which provided that all contracts, compensations, acts and proceedings by the officers of the corporation and its executive committee in conducting the business of the corporation be and they were "hereby approved, confirmed and ratified."

On January 29, 1960 at a meeting of the Board of Directors Yarber as chairman explained to the directors that he had obtained for the corporation a $257,000 loan from the Bank secured by the two second lien notes "but the Bank required the corporation to pick up a $65,000 unpaid personal loan of his which was included as a part of the $257,000 loan to the corporation." Yarber also told the directors that it was necessary for the corporation to sell the $600,000 note to pay off the $257,000 loan and to meet other obligations of the corporation, but he had been unsuccessful in selling the note.

On June 17, 1960 the Board of Directors of TexMex by resolution directed their attorney to write a letter to the Bank advising that the Board of Directors "did not recognize the $65,000 loan by the Bank to Mr. Yarber as an obligation of the corporation; and that the proper officials of the company would be authorized to negotiate for the renewal of the balance of $167,000 due by the corporation on its portion of the $257,000 note."

Negotiations were thereafter had with the Bank, but the Bank refused to reduce the TexMex note by $65,000 and to renew and extend the note as so reduced.

On June 22, 1960 upon request of the Bank a letter was written to the payer of the $600,000 second lien note advising him to make his monthly payments of $5,000 direct to the Bank rather than TexMex. Thereafter said payments were made direct to the Bank.

Some time prior to October 7, 1960 the Board of Directors of TexMex passed a resolution to the effect that the sale of the $600,000 second lien note pledged to the

Bank was necessary to pay off various obligations owed by TexMex, including the indebtedness to the Bank.

By October 14, 1960 Ervin W. Atkerson had agreed to purchase the $600,000 second lien note for $370,000. At the time there was an unpaid balance of $540,000 on said note.

On October 17, 1960 Ervin W. Atkerson for the sum of $370,000 purchased from the Bank the notes then pledged to the Bank to secure the $257,000 loan to TexMex. Of the $370,000 paid by Atkerson the Bank received $226,655.65. The Bank assigned and delivered to Atkerson (1) two notes of TexMex, one being the note for $257,000, the other a note for $5,999.92 executed March 29, 1960; and (2) the collateral securing the above notes, being (a) the $600,000 second lien note, (b) the Yarber note to TexMex of $65,270.83 and (c) a $40,000 note of Acme Securities Corporation, together with all security which had been pledged with the Bank to secure payment of the last two notes above named.

The assignment from the Bank to Atkerson was made without recourse on the Bank and without any warranty or representations by the Bank as to the validity, genuineness or legality thereof. The indebtedness of TexMex as evidenced by the $257,000 note was extinguished so far as the Bank was concerned. The agreement entered into between the Bank and TexMex when the loan was made thus became fully executed on both sides.

The balance of $143,344.35 remaining out of the $370,000 purchase price was paid to TexMex by Atkerson. This sum together with $55,298.74 received by TexMex in the sale of other properties was used to pay other creditors of TexMex.

On October 7, 1960 more than 80 percent of the shareholders of TexMex voted the adoption of the following resolution:

"RESOLVED that the sale of the second deed of trust notes originally executed by Airport Holiday Corporation and payable to The Texmex Corporation in the original sum of $600,000, dated October 1, 1959, on which there is an approximate balance of $540,000, have been sold to E. W. Atkerson for approximately $370,000 cash, and the action of the Board of Directors expressed in its resolution on this subject is in every respect approved, ratified, and confirmed, including the disbursements out of the purchase price as detailed in said Board of Directors resolution."

The resolution of the Board of Directors referred to in the above shareholders' resolution contained this provision:

"Therefore, the officers of the corporation are also authorized and directed to pay off and discharge the secured claim asserted by the Republic National Bank in the approximate sum of $254,049.40, plus accrued interest, * * *."

On December 23, 1960 a petition in bankruptcy was filed against TexMex. On March 21, 1961 Hon. Bernard Whitten was appointed Trustee in Bankruptcy.

On July 27, 1962 this action against the Bank was filed by the Trustee.

In an affidavit Robert M. Cozine states that the fact that TexMex had paid from its corporate funds a personal debt of Robert Yarber was not disclosed to the shareholders of TexMex in any information or material sent to them by the corporation; and that fact was not discussed at any shareholders' meeting. The total number of shareholders or who they were is not shown in the record. However, in his trial brief (made part of the Transcript) appellee concedes that the directors were shareholders. As already stated, the directors knew about the questioned transaction not later than January 29, 1960. Whether they knew of it before that date is not shown by the record.

## OPINION

Though appellant Bank and appellee Trustee present only two very general

points and counter points on appeal their briefs, pro and con are concerned specifically with five contentions designated by appellant as *Arguments*. These so-called *Arguments* are really the points on appeal presented by appellant as grounds for reversal of the trial court's judgment and rendition by this court of judgment in favor of the Bank. These five *Arguments* are:

*Argument (a)* The Trustee has no cause of action against the Bank under Article 2.04, Texas Business Corporation Act, V.A.T.S.

*Argument (b)* TexMex as a matter of law ratified the transaction with the Bank upon which this suit is based.

*Argument (c)* The Trustee is estopped as a matter of law to recover against the Bank.

*Argument (d)* The Trustee may not disaffirm that part of the agreement with the Bank which he considers onerous to TexMex and affirm and retain the benefits of the beneficial part.

*Argument (e)* TexMex sustained no damages in the transaction with the Bank.

■ We agree with appellant's *Argument (a)* as above stated. Art. 2.04, subd. A, Texas Business Corporation Act, enacted by the Legislature in 1955, provides: "Lack of capacity of a corporation shall never be made the basis of any claim or defense at law or in equity."

So far as we know the above statute has never received a judicial interpretation by the courts of our state. However, similar laws in other jurisdictions have been construed in keeping with the Bank's contention. Stadium Realty Corp. v. Dill, 233 Ind. 378, 119 N.E.2d 893; Strauss v. W. H. Strauss & Co., Inc., 330 Pa. 517, 199 A. 195; Wickstrand v. Nelson, 273 Mich. 393, 263 N. W. 404; Dwelley v. Tom McDonnell, Inc., 334 Mich. 229, 54 N.W.2d 217; California Canning Peach Growers v. Harkey, 11 Cal. 2d 188, 78 P.2d 1137. In the Dill case the money lender, Dill, knew that the loan to the corporation was for the personal use of Eberhard, the corporation president. Nevertheless the statute was held to be applicable. In the Strauss case there was no consideration flowing to an insolvent corporation, which signed an accommodation note for J. F. Kaufman, its secretary and treasurer. The money loaned went to pay a personal debt owed by Kaufman. Yet the transaction was upheld because of the statute.

Appellee on the other hand argues that Art. 2.04 is merely a limitation on the common law doctrine of *ultra vires* and was enacted only to protect innocent parties, and may not be invoked by a party who has actual knowledge of the lack of authority or lack of capacity. In support of this view appellee cites Art. 1349, V.A.C.S., Art. 2.02 (6), Texas Business Corporation Act, Comment of Bar Committee relating to Art. 2.04; Commissioners' Notes to Uniform Business Corporation Act, Sec. 11; and 13 Am.Jur. CORPORATIONS, Sec. 753. These authorities as we view them do not control our decision here.

The Bar Committee's comment, referred to by appellee, seems to us to refer to Section B of Art. 2.04, not to Section A of the article. The Uniform Business Corporation Act, referred to by appellee, was withdrawn in 1958 by the National Conference of Commissioners on Uniform State Laws. Vol. 1, Mod.Bus.Corp.Act, Ann., Sec. 4.03, page 5. The Texas Act was patterned after the Model Business Corporation Act, Vol. 3A, V.A.C.S., page IX. Neither the Texas Act nor the Model Business Corporation Act limit the defense in question to parties who have no knowledge of the lack of capacity. See also 14 Tex.Jur.2d 495. Under Art. 2.04 of the Texas Business Corporation Act, corporations and their shareholders have protection against *ultra vires* acts of officers and directors: they may sue the officers and directors to recover assets lost as a result of such activities. Art. 2.41 Texas Business Corporation Act; 40 Tex.L. Rev. 677, 690. In fact Art. 2.41(2) and (4)

expressly impose liability on directors who assent to the making of a loan to an officer. Under Articles 1349 and 1351, V.A.C.S. the Attorney General may bring a suit to forfeit the charter of a corporation which violates Article 1349. Art. 4, Sec. 22, Constitution of Texas Vernon's Ann.St.; Union Men's Fraternal & Ben. Ass'n v. State, Tex. Civ.App., 190 S.W. 242. We think Article 1349 must be interpreted so as not to nullify or conflict with Art. 2.04, subd. A of the Corporation Act, which is a much later enactment. Moreover, Art. 1349, V.A.C.S. must be construed in connection with Art. 1351, V.A.C.S. The latter statute expressly provides that when the assets of a corporation have been used in violation of Art. 1349, V.A.C.S. by any officer or director it shall be considered the act of the corporation unless within one year from the date of the violation it has caused an order to be entered repudiating the wrong and dismissing all persons connected with such violation.

As to the reference in 13 Am.Jur., Sec. 753, it will be seen from Note No. 7 that the statement therein contained as to actual knowledge is based on the Commissioners' Notes to the Uniform Business Act, Sec. 11, and 10 Ohio Jur. The Uniform Business Act and the Ohio law have been withdrawn or changed since 1938, when 13 Am.Jur. was published.

We sustain appellant's *Argument (a)*.

■■■ We also agree with appellant's *Argument (b)* to the effect that TexMex ratified the transaction with the Bank. On December 4, 1959 the corporation's Board of Directors by resolution "approved, confirmed and ratified" all contracts, compensations, acts and proceedings of its officers. The record does not show that the directors took this action with actual knowledge of the payment of Yarber's note, nor does it show that the action was taken in actual ignorance of the facts. However, Robert M. Cozine, an officer and director of the corporation, who did not benefit from the payment of Yarber's note, certainly had knowledge of the facts. It was he who countersigned all of the company's checks written in connection with the agreement with the Bank, including the payment of Yarber's personal note. Under the circumstances Cozine's knowledge will be imputed to the corporation. Goldstein v. Union Nat'l Bank, 109 Tex. 555, 213 S.W. 584; Reed v. Continental State Bank of Beckville, 2 S.W.2d 426 (Tex.Com.App.).

We point out also that the Board of Directors of TexMex took no action to comply with Art. 1351, V.A.C.S. The alleged violation took place November 27, 1959. More than a year transpired from the date of the violation without any action by TexMex through its Board of Directors. Therefore under the terms of Art. 1351, V.A.C.S. the paying of Yarber's debt to the Bank with corporate funds must be considered the act of the corporation.

However, we need not rest ratification in this case on implied or imputed knowledge of the Board of Directors. It is undisputed that on January 29, 1960 Yarber himself told the Board of Directors that the Bank had "required the corporation to pick up a $65,000 unpaid personal loan of his which was included as part of the $257,000 loan to the corporation." It is true that the Board then ordered its attorney to write a letter to the Bank repudiating the Yarber payment and seeking to renew the $257,000 note less the $65,000 paid on Yarber's personal note. But the Bank refused to renew the note on such terms. And the undisputed facts are that after this effort at repudiation the Board of Directors by its conduct and actions acquiesced in the payment of Yarber's note and recognized the Bank's claim as an obligation of the corporation.

With actual knowledge of the facts the Board of Directors performed these acts:

(1) On June 22, 1960 by agreement between the Bank and the Board the payer of the $600,000 second lien note was instructed to make his $5,000 monthly payments direct to the Bank for application on the $257,000 note. So far as the record shows

the Board of Directors in making this agreement did not challenge the amount of the Bank's claim.

(2) Prior to October 7, 1960 the Board passed a resolution to sell the $600,000 second lien note so as to pay off various obligations including the Bank's claim. This resolution was later approved and ratified by more than 80 percent of the shareholders of TexMex

(3) On October 17, 1960 Ervin W. Atkerson purchased the $600,000 second lien note on which there was a balance still owing of $540,000. He paid the Bank $226,000 which was the balance due on the $257,000 note of TexMex and included the $65,000 Yarber debt. This was done with the knowledge of the Board of Directors of TexMex.

Appellee says that as matter of law the unanimous consent of all the shareholders of a corporation is necessary before a corporation can ratify the payment out of corporate assets of a personal obligation of one of its officers. While some authority may be cited in support of appellee's contention we believe the great weight of authority is clearly to the contrary.

■ In the instant case only Yarber of the officers on the Board of Directors had any personal interest or profit in the transaction in question. It is not shown that Cozine, who countersigned the check in payment of Yarber's debt, or any of the other directors had any personal interest in the payment. Under such circumstances the Board of Directors could ratify the transaction either actively or by acquiescence. Kirby v. Fitzgerald, 126 Tex. 411, 89 S.W.2d 408; Brooks v. Zorn, Tex.Civ.App., 24 S.W.2d 742; Hall v. Crawford & Delphenis Co., Tex.Civ.App., 11 S.W.2d 804; Fort Worth Nat'l Bank v. Harwood, 229 S.W. 487 (Tex.Com.App.). We sustain appellant's *Argument* (b).

■ We also agree with the Bank's *Argument* (c) that the Trustee is estopped

as a matter of law to recover against the Bank.

Appellee does not plead fraud on the part of the Bank. So far as the record shows the Bank acted in good faith.

TexMex unquestionably received benefits as a result of its agreement. These benefits were (1) payment of the $97,500 note of Peoples' Realty Corporation, the subsidiary of TexMex; (2) execution by Yarber of a note payable to TexMex secured by Yarber's 37,500 shares of TexMex; (3) discharge of any obligation by TexMex to buy Yarber's shares at $2 per share upon call by the Bank during the term of Yarber's note to the Bank; (4) the availability of $73,800 cash for payment, and the payment by TexMex, of said sum to various creditors; and (5) the residue of $21,000 left to the credit of TexMex in its bank account after all the above payments were made.

The Bank in reliance on the agreement increased the loan to TexMex by approximately $97,000 even if the payment of the $97,500 note of Peoples' Realty Company and the $65,000 note of Yarber are not included in the calculation.

We believe the Bank's claim of estoppel is supported by these authorities: Texas W. Ry. Co. v. Gentry, 69 Tex. 625, 8 S.W. 98 (1888); Bond v. Terrell Cotton & Woolen Mfg. Co., 82 Tex. 309, 18 S.W. 691 (1891); Tenison v. Patton, 95 Tex. 284, 67 S.W. 92 (1902); Kincheloe Irrigation Co. v. Hahn Bros. & Co., 105 Tex. 231, 146 S.W. 1187 (1912); Reed v. Continental State Bank of Beckville, 2 S.W.2d 426 (Tex.Com. App., 1928); Lange Soap Co. v. Ward, 269 S.W. 851 (Tex.Civ.App., San Antonio, 1925), no wr. hist.; Malone v. Republic Nat'l Bank & Trust Co., 70 S.W.2d 809 (Tex.Civ.App., Dallas, 1934), err. dism.; Williford Lumber Co. v. Malakoff Brick Co., 113 S.W.2d 248 (Tex.Civ.App., Dallas, 1938), err. dism.; and see cases cited in 1 Hildebrand, Texas Corporations, pages 350 to 352, inclusive.

In answering the Bank's *Argument* (c) appellee relies on Dunagan v. Bushey, 152

Tex. 630, 263 S.W.2d 148 and Farracy v. Security Nat'l Bank, Tex.Civ.App., 4 S.W. 2d 331. Neither of these cases seems to us to be in point here. They were both decided prior to the enactment of the Texas Business Corporation Act in 1955. In the Dunagan case the corporation received no benefit. It was the victim of a scheme by its directors and organizers to benefit themselves without complying with Constitutional provisions in regard to securing a charter. No ratification or estoppel was involved or could have been involved. In the Farracy case no benefit came to the corporation. The corporation officers did not execute notes to the corporation after they replaced their personal notes with corporation notes. We sustain appellant's *Argument* (c).

We also agree with appellant's *Argument* (d). The transaction of November 27, 1959 was a "package" deal. It was the result of a counter offer made by the Bank and accepted by TexMex in its entirety. The entire agreement has already been described in detail in this opinion. The Trustee seeks to repudiate only a portion of the transaction—the payment by Tex-Mex of Yarber's note. The Trustee proposes to keep all the benefits which came to TexMex in the transaction.

█ It is to be remembered that this is not an executory contract. It is a contract fully performed and executed on both sides. The Trustee may not disaffirm that part of the agreement which he considers onerous and affirm and retain the benefits of the beneficial part. Menard v. Sydnor, 29 Tex. 257 (1867); Reed v. Continental State Bank of Beckville, 2 S.W.2d 426 (Tex. Com.App., 1928); McCombs v. Abrams, 28 S.W.2d 584 (Tex.Civ.App., Galveston, 1930), affirmed 48 S.W.2d 612 (Tex.Com. App., 1932); Nat'l Aid Life of Oklahoma City, Okla. v. Adams, 157 S.W.2d 957 (Tex. Civ.App., Eastland, 1941), err. ref.; Mazzola v. Lucia, 109 S.W.2d 273 (Tex.Civ. App., Beaumont, 1937) err. ref.; Ogburn-Dalchau Lumber Co. v. Taylor, 59 Tex.Civ.

App. 442, 126 S.W. 48 (1910), no wr. hist.; Southwestern Cooperage Co. v. Kivlen, 266 S.W. 826 (Tex.Civ.App., Dallas, 1924). We sustain the Bank's *Argument* (d).

We shall not pass on the Bank's *Argument* (e). Considering the record before us as a whole we are of the opinion that our decision in this case does not depend on the question whether TexMex sustained any damages in its transaction with the Bank. That is not an issue in the application of Art. 2.04, subd. A of the Texas Business Corporation Act, or in the other points urged by the Bank.

Since the material facts are undisputed and since we have sustained the Bank's *Arguments* (a), (b), (c) and (d) we have concluded that the judgment of the trial court should be reversed and judgment here rendered that the Trustee take nothing by his suit against the Bank.

It is so ordered.

Reversed and rendered.

## ON REHEARING

The statute in the case of Stadium Realty Corp. v. Dill, et al., 233 Ind. 378, 119 N.E.2d 893 is not so similar to our Art. 2.04, subd. A, Texas Corporation Act, as it is similar to our Art. 202A(6), Texas Corporation Act. Nevertheless we think it is appropriate to cite the Dill case in support of our holding in this case for these reasons: (1) the statute in the Dill case prohibited loans by a corporation to any officer or director of the corporation; (2) Dill and partners loaned $60,000 to the corporation; (3) at the time this loan was made Dill knew that the corporation proposed to loan and did loan $50,000 of the money to the corporation's president; (4) the corporation thereafter contended that the loan by it to its president was *ultra vires* and therefore void, which prevented Dill and partners from recovering on their loan to the corporation; (5) the corporation sought to avoid its contract with Dill and partners without making restitution to the partners; (6)

Dill's knowledge that the corporation was going to lend the money to its president did not make the loan by Dill and partners void; and (7) the court held that Dill and partners were entitled to recover on their loan to the corporation.

The Trustee says that we were mistaken when we said in our original opinion that the Board of Directors of TexMex took no action to comply with Art. 1351, V.A.C.S. In support of his contention the Trustee says that the Board did not know until January 29, 1960, when Yarber told them, that part of the loan from the Bank had been used to pay Yarber's debt to the Bank. The bankruptcy proceeding against TexMex was filed December 23, 1960. Therefore, according to the Trustee, we were in error in saying that more than a year had transpired without any action by TexMex through its Board of Directors in compliance with Art. 1351, V.A.C.S.

We find no evidence in the record to show that all or a majority of the members of the Board had actual knowledge prior to January 29, 1960 of the loan by TexMex to Yarber. However, it is certain that Robert M. Cozine, a disinterested officer and director of TexMex, in his official capacity had knowledge of the facts for more than a year prior to December 23, 1960. We shall not pass on the question whether under the circumstances here present the other directors in the proper discharge of their responsibilities as directors should have known of the loan to Yarber long before Yarber himself told them of it. See 19 C.J.S. Corporations § 762, p. 109.

The statute, Art. 1351, V.A.C.S., places the responsibility on the directors to take the prescribed action *within one year from the date of violation*, (not the date of actual knowledge) otherwise the act shall be considered that of the corporation. The violation occurred November 27, 1959. The proceeding in bankruptcy was filed December 23, 1960—well over a year after the violation. No action had been taken during that time to comply with Art. 1351, V.A.C.S.

We do not hold that TexMex lost any of its rights against its officers and directors by its failure to act within a year after the violation. But we do hold that so far as Republic National Bank of Dallas is concerned the act became the act of the corporation under Art. 1351, V.A.C.S. because of the failure of the Board to act within a year from the date of the violation.

The motion for rehearing is overruled.

Overruled.