Otis KIRKLAND, Plaintiff,

v.

E.F. HUTTON AND COMPANY, INC., a Delaware corporation, William Phillips and Ronald Pruitt, Defendants.

Civ. A. No. 80–72737.

United States District Court,
E.D. Michigan, S.D.

March 4, 1983.

Richard T. Fenton, Detroit, Mich., for plaintiff.

Gerald C. Davis, Livonia, Mich., for defendants.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

PATRICIA J. BOYLE, District Judge.

Before the court is defendants' motion for partial summary judgment. Plaintiff is the manager of the Detroit office of The Dictaphone Company and was approached by defendant William Phillips, an account executive (stockbroker) with defendant E.F. Hutton, to invest in securities through E.F. Hutton. Plaintiff did so invest, eventually selling through E.F. Hutton the Dictaphone stock he had acquired through his employment and, as a result of the investments made by Phillips and defendant Ronald Pruette, another account executive, lost an estimated Seventy-Five Thousand Dollars.

Plaintiff now sues both account executives and E.F. Hutton, seeking actual and exemplary damages. The complaint con-

tains nine stated causes of action and seeks damages and attorneys fees from all three defendants jointly and severally. The counts (called "causes of action") include violations of various sections of the 1933 and 1934 federal securities acts; violations of the rules promulgated under those statutes; violations of the National Association of Securities Dealers (hereinafter "NASD") rules; violations of the New York Stock Exchange (hereinafter "NYSE") rules; violations of the securities statutes through violation of the NASD and NYSE rules; and violations of the Michigan blue sky laws regulating securities, common-law negligence, and common-law fraud.

In greater detail, plaintiff alleges that he agreed with defendant Phillips to invest several thousand dollars in securities to be brokered by E.F. Hutton and that subsequently Phillips bought for plaintiff 2000 calls (or options to purchase shares) in ConEdison stock. Plaintiff was not provided with an options prospectus and was not advised by Phillips or an E.F. Hutton agent of the risks of options trading, an omission plaintiff alleges to be a violation of NASD and NYSE rules.

Most significantly, plaintiff alleges that Phillips persuaded him to sell some of his Dictaphone (Pitney-Bowes) stock and purchase 1000 shares of Trans World Corporation (hereinafter "TWC"). Phillips allegedly told plaintiff he had "inside information" that Texas International (hereinafter "TI"), a Texas airline, was attempting a takeover of TWC stock outstanding which would cause the value of the TWC stock to rise.

When Phillips brokered the purchase of TWC stock for plaintiff, the stock was at Twenty-Seven and 00/100 Dollars ($27.00) per share. Two weeks later, allegedly, the price had dropped to Seventeen and 00/100 Dollars ($17.00). Phillips persuaded plaintiff to buy an additional 1000 shares of TWC stock. The value of TWC continued to fall, while the value of the Dictaphone stock plaintiff had sold (and continually sold to meet payments on the margin calls in connection with the financing of the purchase of TWC stock) remained stable.

Phillips finally sold for plaintiff the 2000 shares of TWC stock, getting $15 & 7/8 for 1000 shares and $15 & 3/8 for the second 1000 shares. Those sales were 3 and 4 months after Phillips had initially persuaded plaintiff to make the first buy of TWC stock.

At the heart of plaintiff's complaint are the allegations that Phillips did not tell plaintiff all the pertinent information known to Phillips, amounting to intentional omission of potentially discouraging information in an attempt to induce plaintiff to buy the TWC stock and that Phillips was "churning" plaintiff's account, by engaging in quick sales and purchases, without regard to the long-term return, in an attempt to generate large commissions for himself. Plaintiff invokes several statutory and common-law causes of action in order to recover for these basic injuries.

Each cause of action in the complaint is the subject of the instant motion, although several allegations within those separate counts are not addressed.

The allegations against E.F. Hutton rest on derivative liability, either through respondeat superior or through conspiracy/aiding and abetting or as a "control person" within the meaning of the federal securities laws. The allegations against Phillips and Pruette are those of principal liability and will be addressed separately in this opinion.

The allegations of Count I seek recovery for the omissions and misrepresentations of Phillips and Pruette in their brokering of plaintiff's investments, violating sections 10(b) and 15(c) of the 1934 Securities Exchange Act and section 17 of the 1933 Securities Act and the rules promulgated under those sections, rule 10b–5 and rule 15c–1 & –2.

Defendants contend that (1) sections 15 and 17 do not give rise to a private cause of action and thus do not constitute proper counts here, (2) sections 15 and 17 are aimed at the initial distribution of stock, rather than the trading and resale after distribution as was involved here, (3) plain-

tiff himself made use of any illegally given insider information from Phillips (by plaintiff's purchase upon hearing of the insider information) and thus is barred from suit by the doctrine of *in pari delicto,* (4) Phillips's exhortations to buy the TWC stock amounted to sales puffing, not actionable at law, and (5) the information about the Texas International takeover that plaintiff contends should have been told him was public and/or rumor and therefore created no duty to be told to plaintiff.

Since defendants' assertion of the *in pari delicto* defense, if successful, would bar plaintiff's cause of action under all three of the federal securities statutes, that defense will be addressed first.

Defendants argue that plaintiff himself was aware that the insider information furnished him by the broker was not information available to the public and that, by choosing to purchase the TWC stock based on that information, any violation of the federal securities laws was shared by plaintiff, and plaintiff is thus precluded from recovering against the broker.

 Section 10(b) of the 1934 Securities Exchange Act prohibits the use of nonpublic information in trading securities. A corporate insider possessing confidential, material information undisclosed to the public at large is required either to disclose the information or to abstain from trading in the stock until the information is publicly disseminated. *See SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). A "tipper" who advised another of inside information material to a certain transaction has violated section 10(b) and rule 10b–5, *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 495 F.2d 228 (2d Cir.1974), and is liable to third parties who were damaged by having

traded without the benefit of the confidential information passed by the "tipper" to only a select few ("tippees"[1]). *See Texas Gulf Sulphur Co., supra.* Here, however, plaintiff is a "tippee" who wishes to hold the "tipper" liable, in the face of an asserted defense of *in pari delicto.*

The defense of *"in pari delicto,"* which means "in equal fault," is a common-law defense applicable where "a plaintiff seeking damages or equitable relief is himself involved in some of the same sort of wrongdoing." *Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 138, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968). *See also Tarasi v. Pittsburgh National Bank,* 555 F.2d 1152, 1156–57 & n. 9 (3d Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977). Its application in the realm of broad statutory schemes directed toward regulation through the mechanism of private civil actions is uncertain, however, particularly in light of the Supreme Court's criticism of wholesale importation of the defense into areas in which the private lawsuit serves as the "bulwark of . . . enforcement." *Perma Life Mufflers, supra,* 392 U.S. at 139, 88 S.Ct. at 1984.

Neither the Supreme Court nor the Sixth Circuit Court of Appeals has decided the application of the *in pari delicto* defense to federal securities cases based on the antifraud provisions of the 1933 Act.[2] While the circuits are not in agreement on whether a "tippee" can successfully surmount the defense raised by a "tipper," the majority of courts deciding the issue have held the defense applicable in the proper circumstances. *Compare Tarasi v. Pittsburgh National Bank, supra; Malamphy v. Real-Tex Enterprises, Inc.,* 527 F.2d 978 (4th Cir. 1975); *Woolf v. S.D. Cohn & Co.,* 515 F.2d 591 (5th Cir.1975), *vacated,* 426 U.S. 944, 96

---

**1.** "The author, so far as he knows, was the first to use the very convenient term, 'tippee.' Having some respect for the English language, however, he does pray his readers, for at least a decent interval, not to join elements of the press in dropping the quotation marks." 6 L. Loss, Securities Regulation 3561 (2d ed. Supp. 1969).

**2.** The Supreme Court has ruled that the *in pari delicto* defense is not available in federal antitrust actions. *See Perma Life Mufflers, Inc. v. International Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968) (Black, J.). For an excellent discussion of the applicability of the *Perma Life* decision to the securities area, *see Tarasi v. Pittsburgh National Bank, supra.*

S.Ct. 3161, 49 L.Ed.2d 1181 (1976); *James v. DuBreuil,* 500 F.2d 155 (5th Cir.1974); *Clement A. Evans & Co. v. McAlpine,* 434 F.2d 100 (5th Cir.1970), *cert. denied,* 402 U.S. 988, 91 S.Ct. 1660, 29 L.Ed.2d 153 (1971); *Kuehnert v. Texstar Corp.,* 412 F.2d 700 (5th Cir.1969); *In re Haven Industries, Inc.,* 462 F.Supp. 172 (S.D.N.Y.1978); *Weitzman v. Stein,* 436 F.Supp. 895 (S.D.N.Y.1977); *Hogan v. Teledyne, Inc.,* 328 F.Supp. 1043 (N.D.Ill.1971) (all allowing the defense), *with Nathanson v. Weis, Voison, Cannon, Inc.,* 325 F.Supp. 50 (S.D.N.Y.1971) (barring the defense).[3] Notwithstanding the number of decisions favoring the. defense, however, the reasons given for rejecting the defense in the *Nathanson* decision are persuasive and bear careful consideration absent guidance from this circuit's appellate court on the question.

Those courts that have allowed the defense to be asserted by a "tipper" in a 10b–5 action brought by a "tippee" have done so on the rationale that by a "tipper" depriving a "tippee" of recovery in a civil action, the "tippee" cannot gain from having violated the securities laws and is encouraged to disclose the inside information before trading, thereby exposing the "tipper" who originally violated the regulatory scheme by passing on insider information. Those decisions rest on the perception that to bar the defense, thereby rendering the "tipper" liable to a "tippee" who has traded on the information, is to provide the "tippee" with an "enforceable warranty": if the "tippee" profits from the trade, he wins, and if he does not profit, he can sue his "tipper" and therefore does not lose. *See, e.g., Kuehnert v. Texstar Corp.,* 412 F.2d at 704–05.

By contrast, the reasoning of the *Nathanson* decision, which bars the defense, resolves the competing considerations in the opposite way. The *Nathanson* court, concerned that the *in pari delicto* defense insulates an insider "tipper" who has violated securities laws, emphasizes the difference in

threat to the integrity of the federal securities market of the classic "tipper," usually a corporate insider or broker, and the classic "tippee," often a customer "whose potential for harm is minimal as compared to that of the original source of the information." 325 F.Supp. at 57. The court held that, although a "tippee" might feel less at risk in acting on inside information because he has recourse against his "tipper" through a civil suit and therefore might be less deterred from acting on that inside information, the greater benefit to the scheme of securities regulation is derived from the threat of suits by wronged "tippees" and that that threat would act to deter the "tippers" themselves, who are in the position to do the most harm and who are "at the fountainhead of the confidential information." *Id.* Because "tippers" are the source of the information illegally disclosed and acted upon, they "should not benefit by this defense; denying it . . . can serve as an effective deterrent to premature disclosures of material inside information." *Id.* 58.

■ The Supreme Court has emphasized that the scheme of securities laws was intended by Congress to be interpreted and applied in a flexible manner by the courts, in order to make effective the legislation's remedial purposes. *See Affiliated Ute Citizens v. United States,* 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972); *SEC v. Capital Gains Research Bureau,* 375 U.S. 180, 195, 84 S.Ct. 275, 284, 11 L.Ed.2d 237 (1963). The extent to which the proscriptions of section 10(b) allow common-law defenses must depend closely on whether the defense in question promotes or retards the purpose of the section, that of discouraging the use of confidential information not available to the general trading public.

■ In the case of "tippers" and "tippees" of insider information, the decision of how to apply the securities laws in order best to effectuate their remedial purpose requires that the different circumstances of

---

**3.** Also see the vigorous dissent by Judge Godbold in *Kuehnert v. Texstar Corp.,* 412 F.2d 700, 705–06 (5th Cir.1969), the reasoning of which is reflected at least in part in the *Nathanson* decision.

the two parties to the transaction be considered. Courts and authorities have recognized that the knowledge and potential for harm by "tippers" and "tippees" are not necessarily identical. The "tippee" who receives information from a corporate insider and who trades on that information may not be aware that he has received information carrying with it the obligation to disclose or abstain.[4] He may, for example, not know or have reason to know that the tip "is in the nature of a breach of trust" or may be the beneficiary of a tip so general that the materiality and confidential nature of the tip may be difficult to gauge. 6 L. Loss, Securities Regulation 3563 (2d ed. Supp.1969) [hereinafter L. Loss].[5] Another "tippee," however, may be experienced in securities, may know that he stands in a position to receive undisclosed confidential information from an insider, and may knowingly act on the basis of that information. The deliberate and sophisticated nature of the actions in those instances make them the proper target for the desired deterrent effect of foreclosing suits by "tippees" by providing a defense to "tippers."

By contrast, the "tipper," who possesses information by virtue of an inside position with the corporation and who passes it along to a "tippee," is, at least at the first level, almost always in a position to understand the obligations attendant to the confidential information. The corporate executive who knows of an impending merger, the analyst who has been privy to certain otherwise-undisclosed data, and the broker whose partner, a director of a corporation planning a change in dividend,[6] see 6 L. Loss at 3562–66, are properly the objects of the disclose-or-abstain rule. They are, as has been noted by the courts, often in a

more visible position than their "tippees" and are liable both to their "tippees" and to members of the uninformed public who bought without knowledge of the material information. See Kuehnert, supra, 412 F.2d at 705; id. 706 & n. 3 (Godbold, J., dissenting); Haven, supra, 462 F.Supp. at 180; Nathanson, supra, 325 F.Supp. at 55 n. 26. Allowing such insiders the defense of in pari delicto, although appearing harsh at first blush, would not deprive third-party investors of a cause of action and would not deprive a relatively innocent "tippee," who is not of equal fault and to whom the defense is therefore inapplicable, of recourse for losses based on fraudulent information.

The factors considered by courts in determining whether to apply the in pari delicto defense, formulated with relative consistency in the securities area, would seem to yield a flexible case-by-case application in a fashion expressly designed to further the purposes of the securities laws. The elements of the defense require that the parties be mutually, simultaneously, and relatively equally at fault, that the plaintiff have acted knowingly in the illegal activity, and that the application of the defense protect the interest of the investing public and not frustrate the objectives of the securities laws. See Woolf v. S.D. Cohn & Co., 515 F.2d 591, 604 (5th Cir.1975), vacated, 426 U.S. 944, 96 S.Ct. 3161, 49 L.Ed.2d 1181 (1976); Weitzman v. Stein, 436 F.Supp. 895, 905–06 & nn. 17 & 21–24 & authorities cited therein (S.D.N.Y.1977). Cf. Lawler v. Gilliam, 569 F.2d 1283, 1292 (4th Cir.1978) (application of in pari delicto defense to action brought under section 12(1) of the Securities Act of 1933 for offers

---

**4.** "As Darke's 'tippees' are not defendants in this action, we need not decide whether, if they acted with actual or constructive knowledge that the material information was undisclosed, their conduct is as equally violative of the Rule as the conduct of their insider source, though we note that it certainly could be equally reprehensible." SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 852–53 (2d Cir.1968) (en banc), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969).

**5.** Professor Loss posits "the case of the stranger to the corporation who is told by his secretary that she was told by the corporation's geologist that if she had any extra cash it might not be a bad idea to buy some of the stock." 6 L. Loss, Securities Regulation 3563 (2d ed. Supp.1969).

**6.** In the latter example, the broker is both "tipper" and "tippee" when he passes the information along to a customer.

or sales in violation of registration requirements). Further, the defense is one that is to be applied only in the sound discretion of the trial court. *Weitzman, supra,* 436 F.Supp. at 905. The wooden application of "broad common-law barriers to relief" feared in *Perma Life Mufflers,* 392 U.S. at 138, 88 S.Ct. at 1984, is unlikely to occur in the securities area where the test requires a considered judgment of the effect on the public interest.

Moreover, as noted by the Third Circuit in *Tarasi,* while on the particular facts presented by the *Perma Life* case the majority criticized the application of the defense, five of the justices wrote that, on the appropriate facts indicating illegal conduct by a plaintiff, relief might well properly be denied, in order that the equally culpable wrongdoer not profit from his wrong. *See Tarasi, supra,* 555 F.2d at 1158 (citing the separate opinions of Justices White, Fortas, Marshall, and Harlan, the last of which was joined by Justice Stewart). The majority opinion in *Perma Life* rejected the applicability of *in pari delicto* at least in part because the participation of the plaintiffs in the claimed illegal activity was "not voluntary in any meaningful sense." 392 U.S. at 139, 88 S.Ct. at 1985. The result is the correct one in the antitrust context where the greater resourcefulness and bargaining power of a monopoly is brought to bear on a franchise. Distinguishable, however, is the securities transaction in which a "tippee" receives and acts on inside information, without the coercion or duress often operative in the antitrust setting. The decision of a "tippee" to trade on the basis of nonpublic information is wholly voluntary, not one arising from agreement between the parties. Unlike the antitrust context, in which the alternative to illegal activity may be economic failure at the hands of unscrupulous competitors, the alternative to securities trading on confidential information is to refrain from trading. The application of the defense to securities suits is not inconsistent with the reasoning of *Perma Life.* Indeed, the decision counsels that the interplay between the public interest in enforcement of legislation and the interest in leaving guilty parties where they stand must be carefully balanced, and the ultimate resolution turns on the particular facts of the case and the objectives of the legislative scheme in question.

As noted earlier, the classic "tipper" often occupies a position of greater visibility than does the classic "tippee" and is a more likely target for suits both by third parties who were damaged by the transactions to which they were parties without the benefit of the confidential information and by the SEC. Although Judge Godbold concluded in his dissent in *Kuehnert* that allowing the defense would insulate "tippers" from litigation and thwart the objectives of the securities laws, allowing a "tipper" the *in pari delicto* defense, while eliminating the threat of a suit by a wronged "tippee," does not diminish the threat of prosecution by others. On the other hand, barring the defense provides to a culpable "tippee" a cause of action, while leaving intact a cause of action against the "tipper" that is only a cumulative and superfluous threat when viewed against the possible prosecution by third parties and the enforcement agency. The deterrent effect to be had from leaving a culpable "tippee" where he stands, together with the interest in preserving the integrity of the courts by denying recourse to those who are as blameworthy as those from whom they seek to recover, lead me to conclude that the defense is applicable, under the proper facts, to suits brought under section 10(b).

Whether the defense can be invoked by the defendants here depends upon whether, under the facts of the case, plaintiff was relatively equal in fault with defendants, whether he knowingly engaged in the illegal act of using insider information, and whether the public interest is promoted by applying the doctrine. Defendants cite portions of plaintiff's deposition in which plaintiff admits that he understood from the broker's telephone call that the information being passed to him came not from a shrewd analysis of the stocks in question but from someone within the corporation

issuing the stocks. Defendants contends that these admissions indicate that plaintiff knowingly used the nonpublic information in the hopes of profiting in the securities transaction and that his actions are as blameworthy as those of the broker who passed along the information. Plaintiff argues, however, that he was unaware of the illegality of the transaction and that the fault of the two parties is not equal.

The judgment of whether the defense is appropriate cannot be made where, as here, the facts are disputed by the parties and have not yet been presented to the factfinder. There remain issues of material fact with respect to the relative fault of the parties and the *scienter* attributable to plaintiff himself, *see Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), and therefore disposition on a motion for summary judgment is inappropriate. *See Tarasi, supra,* 555 F.2d at 1156; *Haynes v. Anderson & Strudwick, Inc.,* 508 F.Supp. 1303, 1317 (E.D.Va.1981). Accordingly, defendants' motion for summary judgment on the basis of *in pari delicto* is denied without prejudice.

Defendants argue that plaintiff's claim should be dismissed to the extent that it attempts to state a cause of action under section 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q(a), as that section does not afford a private cause of action to individual investors.

Section 17(a) provides:

It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

The section provides the basis for enforcement through injunctive suits brought by the SEC, *see* 15 U.S.C. § 77t(b), or criminal prosecutions by the Attorney General, *id.,* but the question as to whether the statute implies a private cause of action has not received a consistent answer by the federal courts, and the Supreme Court has declined to address the question without it being squarely before that Court. *See Aaron v. SEC,* 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980); *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 733 n. 6, 95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975). The circuit courts of appeals are divided, and the Sixth Circuit has not ruled on the issue. *Compare, e.g., Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir. 1981); *Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979); *Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223, 1244–46 (7th Cir. 1977), *rev'd on other grounds,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979); *Newman v. Prior,* 518 F.2d 97, 99 (4th Cir.1975) (implied private cause of action under section 17(a)), *with Landry v. All American Assurance Co.,* 688 F.2d 381 (5th Cir.1982); *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (no implied private cause of action). *Cf. Wachovia Bank & Trust Co. v. National Student Marketing Corp.,* 650 F.2d 342, 350 n. 19 (D.C.1980), *cert. denied,* 452 U.S. 954, 101 S.Ct. 3098, 69 L.Ed.2d 965 (1981) (question not reached); *Pharo v. Smith,* 621 F.2d 656, 673–74 (5th Cir.1980) (question not reached). Within this circuit, the district courts have reached opposite conclusions on the question. *Compare State of Ohio v. Crofters,* 525 F.Supp. 1133, 1139–40 (S.D. Ohio 1981) (recognizing implied private cause of action), *with Ingram Industries,*

*Inc. v. Nowicki,* 502 F.Supp. 1060, 1067–70 (E.D.Ky.1980) (no private cause of action conferred by section 17(a)).

■ Section 17(a) forms the basis for the language of rule 10b–5, promulgated under section 10(b) of the Securities and Exchange Act of 1934. While section 17(a) applies only to fraud in sales, whereas the rule applies to both sales and purchases, there are few distinctions between them, at least insofar as they authorize SEC action seeking injunctive relief. Both rule 10b–5 and the first subpart of section 17(a) require an intent to defraud ("scienter"), and scienter is required to state a private cause of action under rule 10b–5 as well. *See Aaron v. SEC,* 446 U.S. 680, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Because the courts have found rule 10b–5 to confer a private cause of action, *see Blue Chip Stamps, supra,* some commentators have noted that any claim stated under that rule will be, for most purposes, coextensive with one stated under section 17(a). Judge Friendly noted in his concurrence to the *Texas Gulf Sulphur Co.* decision that "there seem[s] little practical point in denying the existence of [a private cause of] action under § 17," 401 F.2d at 867, and Professor Loss has written that in most respects the question whether section 17 confers an implied cause of action is "much ado about very little." 3 L. Loss at 1786. The United States Supreme Court has recently held that sections 17(a) and 10(b), as well as rule 10b–5, require the SEC to establish scienter as an element of civil enforcement through injunction suits, *see Aaron v. SEC, supra,* and this holding buttresses the view that the proscriptions of section 17(a) are coextensive with those of rule 10b–5 and that there is little reason to reject a private cause of action under the former when one is firmly established under the latter.

Professor Loss has noted the troublesome aspect of that conclusion, however, with respect to what he understands to be the intended symmetry of the securities statutes. He points out that section 12 of the 1933 Act, which expressly provides for a private cause of action, 15 U.S.C. § 77*l,* is more limited than would be a private cause of action implied by the language of section 17(a) and that the limits of the express remedy provided by Congress, including the one-year statute of limitations contained in section 13, 15 U.S.C. § 77m, should not be circumvented by a judicially conferred right of action. 3 L. Loss at 1785–87. He also points out that section 12 shifts the burden of proof from plaintiff to defendant with respect to knowledge of falsity of the fraudulent statements and that a plaintiff suing under section 17(a) would not have the benefit of that legislatively reallocated burden. *Id.* 1786; *see also Pfeffer v. Cressaty,* 223 F.Supp. 756, 758 (S.D.N.Y.1963). He concludes that a wholesale recognition of an implied cause of action under section 17(a), coextensive with that afforded under rule 10b–5, results in an illogical and irregular statute lacking the harmony of remedy intended by Congress.

These concerns aside and recognizing that it is far from clear whether a broad private remedy can be recognized in the statute in all situations, Judge Friendly's pragmatic understanding of the superfluity of section 17(a) where a claim is properly stated under rule 10b–5 is helpful in the instant case. Here, the plaintiff contends that securities were sold to him through the use of materially false statements for the purpose of generating commissions. Although plaintiff's complaint does not contain an express allegation of intent to defraud, the Statement of Claim, fairly read, indicates that plaintiff alleges intentional acts on the part of the defendants. Thus, if the plaintiff is able to sustain the burden of proof with respect to a 10b–5 violation, he has certainly stated a cause of action under the most disadvantageous interpretation of section 17(a). *See Pfeffer v. Cressaty, supra,* 223 F.Supp. at 758. Although the question of damages recoverable under section 17(a) is similarly unanswered, it would appear that those damages available under rule 10b–5 would be recoverable under section 17(a) and that a plaintiff suing successfully under both provisions would be limited to recovery

of the total damages suffered, without duplication for the double violation. *See* 15 U.S.C. § 78bb(a). In addition, whereas a plaintiff still holding the securities allegedly sold to him by fraudulent means is restricted to an action for rescission under section 12 of the 1933 Act, 15 U.S.C. § 77*l*, and is not so restricted under rule 10b–5, no problem of election of remedies is presented in the instant case, for the reason that the plaintiff here no longer holds the securities in question. Thus, this Court need not determine whether an implied cause of action under section 17(a) restricts a securities holder to rescission, as does the rest of the 1933 Act, or whether such a plaintiff has the choice of remedies afforded by the nearly identical provisions of rule 10b–5. *See Pfeffer v. Cressaty, supra.*

▮ Hence, without having to resolve the important policy choices inherent in the decision whether to afford a private cause of action to plaintiffs under section 17(a), I conclude that where, as here, the plaintiff claims a violation of rule 10b–5, including an allegation of fraud going beyond mere negligence, the claim can proceed and nothing is added by a claim under section 17(a) of the 1933 Act. While it might be said that because a private cause of action under that section is unnecessary to the efficacy of the remedies provided by the securities laws, in light of the private cause of action recognized under the rule, the courts should not go beyond the express remedies provided by Congress, the relief given to the plaintiff here (should he prove successful) will not differ whether the claim is stated under both the statute and rule 10b–5, or solely under the rule. Accordingly, it is unnecessary to reach the question at the present time. Should defendants determine, in the course of discovery in the case, that somehow the application of section 17(a) to this plaintiff *does* make a difference, the motion may be brought again, indicating the way in which the question has become significant.

Defendants also argue that even if there is an implied right of action under section 17(a) of the 1933 Act, that section only applies to the purchase of newly issued securities and that the securities involved in this case are exempt, because they were previously issued. This contention requires no further discussion beyond citation to *United States v. Naftalin,* 441 U.S. 768, 777–78, 99 S.Ct. 2077, 2083–2084, 60 L.Ed.2d 624 (1979), where the Supreme Court unequivocally stated:

> Although it is true that the 1933 Act was primarily concerned with the regulation of new offerings, respondent's argument fails because the antifraud prohibition of § 17(a) was meant as a major departure from that limitation. Unlike much of the rest of the Act, it was intended to cover any fraudulent scheme in an offer or sale of securities, whether in the course of an initial distribution or in the course of ordinary market trading. 1 Loss 130; Douglas & Bates, The Federal Securities Act of 1933, 43 Yale L.J. 171, 182 (1933); V. Brudney & M. Chirelstein, Corporate Finance 740 (1972). This is made abundantly clear both by statutory language, which makes no distinctions between the two kinds of transactions, and by the Senate Report, which stated:
>
> > "The act subjects the sale of old or outstanding securities to the same criminal penalties and injunctive authority for fraud, deception, or misrepresentation as in the case of new issues put out after the approval of the act. In other words, fraud or deception in the sale of securities may be prosecuted regardless of whether or not it is of the class of securities exempted under sections 11 or 12." S.Rep. No. 47, 73d Cong., 1st Sess., 4 (1933).
>
> Accord, H.R.Rep. No. 85, 73d Cong., 1st Sess., 6 (1933).

Defendants also argue that there is no implied private right of action under section 15(c) of the 1934 Act, 15 U.S.C. § 78*o*(c). This position is, as defendants concede, contrary to the conclusion reached by the majority of the courts that have addressed the issue. *See Opper v. Hancock Securities Corp.,* 367 F.2d 157 (2d Cir.1966); *Resnick v. Touche Ross & Co.,* 470 F.Supp. 1020 (S.D.

N.Y.1979); *Davis v. Avco Corp.,* 371 F.Supp. 782 (N.D.Ohio 1974); *Franklin National Bank v. L.B. Meadows & Co.,* 318 F.Supp. 1339 (E.D.N.Y.1970). *See also* 3 L. Loss, Securities Regulation 1759–60 (2d ed. 1961).

■ I prefer the approach followed by the Sixth Circuit in *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir.1979). There the district court held that there was no private right of action for an alleged violation of section 15(c)(3) of the 1934 Act. The Sixth Circuit, having found that plaintiff stated a claim under section 10(b) and rule 10b–5 against the broker defendant, declined to reach the issue. In this case, defendants do not seek summary judgment on the section 10(b) and rule 10b–5 claims, except to the extent that they are based on misrepresentations and omissions which defendants contend are not actionable. Accordingly, I decline to reach the issue as to whether there is an implied private right of action under section 15(c) of the 1934 Act, 15 U.S.C. § 78*o*(c).

■ Having addressed the legal arguments raised by defendants, this court will now consider defendants' attacks upon plaintiff's factual allegations in Count I. Defendants argue that the misstatement claimed to have been made by defendant William Phillips amounted merely to "puffing" and opinion and were not material misrepresentations. While I agree that the statements to the effect that plaintiff was going to be a rich man and that the Trans World Corporation stock purchase was the best investment the plaintiff could make were merely puffing, the prediction that the stock would hit Fifty and 00/100 Dollars ($50.00) per share could be a material misrepresentation if the prediction did not have a reasonable factual basis. *Marbury Management, Inc. v. Kohn,* 470 F.Supp. 509 (S.D.N.Y.1979), *aff'd in part, rev'd in part,* 629 F.2d 705 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980); *Gottreich v. San Francisco Investment Corp.,* 552 F.2d 866 (9th Cir.1977); *Rotstein v. Reynolds & Co.,* 359 F.Supp. 109 (N.D.Ill. 1973). At this point, this court is not pre-

pared to conclude that there is no question of material fact whether Phillips's prediction has a reasonable basis.

Defendants also argue that they did not breach their duty to disclose material information. Count I of plaintiff's complaint alleged that defendants failed to disclose that the Board of Directors of Trans World Corporation had publicly announced their resistence to the takeover attempt, that the Board had retained legal counsel and a public relations firm to resist the takeover attempt, that Texas International had unsuccessfully attempted to take over National Airlines and had profited substantially from the unsuccessful attempt to take over National Airlines, that Trans World Corporation was several times larger than Texas International, and that Trans World Corporation has sustained a fourth-quarter loss of $43.8 million. Defendants argue in support of their summary judgment motion that plaintiff has made no allegation that defendant William Phillips had knowledge of the above-stated information at the time plaintiff purchased the stock, that Phillips's representations regarding the Trans World Corporation stock were based on reliable information, and that defendant had no duty to disclose to plaintiff any public information or rumors which may have arisen subsequent to plaintiff's purchase of the Trans World stock.

■ The duty to disclose information is measured by a flexible standard. It "posits a broad continuum ranging from fiduciaries, whose affirmative duty of disclosure is unparalleled, to complete strangers, who need only refrain from intentional misrepresentations." *Stephenson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 813 (9th Cir. 1981). Factors to be considered in determining the scope of a defendant's duties are: (1) the relationship of the defendant to the plaintiff, (2) the defendant's access to information, compared to that of the plaintiff, (3) the benefit to the defendant derived from the relationship with the plaintiff, (4) the awareness by the defendant of the plaintiff's reliance on him or her, and (5) the defendant's activity in initiating the

securities transaction in question. *Kidwell ex rel. Penfold v. Meikle,* 597 F.2d 1273, 1294 (9th Cir.1979).

■ Taking the facts in the light most favorable to the plaintiff, this court finds that there is a question of fact whether defendants had a duty to disclose to plaintiff the possibility that Texas International would not acquire Trans World Corporation when the doubts about the transaction began to surface. With respect to the relationship between the parties, plaintiff testified in his deposition that he told defendant William Phillips that he had little knowledge of the stock market and that he could not afford to lose a lot of money. Given plaintiff's lack of sophistication in investment matters, defendant's access to information was clearly greater. Moreover, there is evidence not only of Phillips's awareness of plaintiff's exclusive reliance on Phillips's advice but also that plaintiff was gravely concerned about the wisdom of his purchase of the Trans World Corporation stock, that he considered selling the stock to repurchase a more prudent investment, and that defendant Phillips reassured him that his Trans World Corporation stock would be a good investment. Finally, plaintiff's deposition testimony presents some evidence that defendant Phillips actively encouraged plaintiff to enter the securities transactions involved in this action. Defendants argue that they had no duty to disclose the information, because it was public information. There is no duty to disclose information to one who should be aware of it. *SEC v. Coffey,* 493 F.2d 1304 (6th Cir.1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975). Under the circumstances of this case, however, I find that there is a question of fact whether defendants reasonably could have expected plaintiff to discover this information on his own, given the heavy reliance he placed on Phillips's advice. Accordingly, I find that there is a genuine question of material fact whether defendants breached their duty to disclose material facts by not disclosing to plaintiff the risks of the Trans World Corporation investment.

Defendants argue that plaintiff has failed to state a cause of action against defendant Ronald Pruette. The only allegation directed specifically to defendant Pruette is that "Defendant, RONALD PRUITT [sic] misrepresented that the Pitney-Bowes stock options would not be sold at less than $1.00." (Complaint ¶ 28(9)). Plaintiff testified in his deposition that he specifically instructed Pruette to sell the options at One and 00/100 Dollar ($1.00). Defendants argue that this conduct, at most, amounts to a state cause of action for breach of contract. Plaintiff has cited no authority in support of its contention that such conduct states a cause of action under the antifraud provisions of the federal securities laws.

■ I agree with defendants that Pruette's alleged conduct in disregarding plaintiff's directive to sell at One and 00/100 Dollar ($1.00) and by selling the options at ¾, at most, was a breach of contract. The breach of contract does not automatically result in a violation of the antifraud provisions of the federal securities laws. *See Broad v. Rockwell International Corp.,* 614 F.2d 418 (5th Cir.1980), *cert. denied,* 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981); *Fenstermacher v. Philadelphia National Bank,* 493 F.2d 333 (3d Cir.1974). There are no facts alleged to raise a question of material fact whether Pruette engaged in any intentional or recklessly manipulative or deceptive conduct. Plaintiff has merely alleged that Pruette did not obey his directive to sell at One and 00/100 Dollar ($1.00). Accordingly, defendants' motion for summary judgment with respect to claims under the federal securities laws against Ronald Pruette is granted.

Defendants next argue that there is no implied private cause of action arising from either the rules of the National Association of Securities Dealers (hereinafter "NASD") or from the rules of the New York Stock Exchange (hereinafter "NYSE") and that, accordingly, Counts II, III, IV, and V of the complaint should be dismissed for failure to state a claim for which relief can be granted. Those claims are for a violation of the

NASD Rules of Fair Practice, article III, sections 2, 15, 16, 18, 19, and 27; a violation of rule 10b–5 arising from a violation of the NASD rules; a violation of the NYSE rules 405, 408, 723, and 726; and a violation of rule 10b–5 arising from a violation of the NYSE rules, respectively.

The circuits are divided on the question whether there is an implied private cause of action for violations of the NASD and/or NYSE rules. *See generally,* Annot., 54 A.L.R. Fed. 11 (1981). Some courts have flatly refused to find an implied private cause of action for violation of these rules. *See, Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980); *Parsons v. Hornblower & Weeks-Hemphill, Noyes,* 447 F.Supp. 482 (M.D.N.C.1977), *aff'd,* 571 F.2d 203 (4th Cir. 1978); *Scharman v. E.F. Hutton & Co., Inc.,* No. 80–74348 (E.D.Mich. April 23, 1982) (Pratt, J.); *Emmons v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 532 F.Supp. 480 (S.D.Ohio 1982); *Golob v. Nauman Vandervoort, Inc.,* 353 F.Supp. 1264 (N.D.Ohio 1972).

Many courts have held, however, that an implied private cause of action for violation of these rules may be sustained, but only where there is an allegation of fraud. *See, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Goldman,* 593 F.2d 129 (8th Cir.), *cert. denied,* 444 U.S. 838, 100 S.Ct. 76, 62 L.Ed.2d 50 (1979); *Rolf v. Blyth, Eastman Dillon & Co.,* 424 F.Supp. 1021 (S.D.N.Y. 1977), *aff'd,* 570 F.2d 38 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978) (circuit court did not reach issue of implied right of action); *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978); *Sanders v. John Nuveen & Co., Inc.,* 554 F.2d 790 (7th Cir.1977), *cert. denied,* 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981); *Utah State University of Agriculture and Applied Science v. Bear, Stearns & Co.,* 549 F.2d 164 (10th Cir.), *cert. denied,* 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977); *Carras v. Burns,* 516 F.2d 251 (4th Cir.1975); *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98,

24 L.Ed.2d 88 (1969). Other courts have distinguished between "housekeeping rules" and rules promulgated directly for the protection of the investing public. *See, Wolfson v. Baker,* 444 F.Supp. 1124 (M.D.Fla. 1978), *aff'd,* 623 F.2d 1074 (5th Cir.1980), *cert. denied,* 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615 (1981) (circuit court did not reach issue of implied right of action); *Sacks v. Reynolds Securities, Inc.,* 593 F.2d 1234 (D.C.Cir.1978); *Sanders v. John Nuveen & Co., Inc. supra; Hayden v. Walston & Co.,* 528 F.2d 901 (9th Cir.1975); *SEC v. First Securities Company,* 463 F.2d 981 (7th Cir.1972). *See also, Ocrant v. Dean Witter & Co.,* 502 F.2d 854 (10th Cir.1974); *Avern Trust v. Clarke,* 415 F.2d 1238 (7th Cir. 1969), *cert. denied,* 397 U.S. 963, 90 S.Ct. 997, 25 L.Ed.2d 255 (1970).

In *Colonial Realty Corp. v. Bache & Co.,* 358 F.2d 178 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (Friendly, J.), the Second Circuit, while finding no implied private cause of action, suggested that the implication of federal civil liability for violation of exchange or dealer association rules could not be determined on an "all-or-nothing" basis, but rather, the court must look to the nature of the particular rule and its place in the regulatory scheme. "The case for implication would be strongest when the rule imposes an explicit duty unknown to the common law." 358 F.2d at 182.

It is significant to note that none of the cases holding that a private cause of action may be implied had the benefit of the Supreme Court's analysis in *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), and in *Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). Both cases emphasize legislative intent as the determinative factor in deciding whether private cause of action should be implied. In *Touche Ross, supra,* the Supreme Court found no implied private cause of action under section 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78q(a), and in *TAMA, supra,* the Court permitted a right of action under section

215 of the Investment Advisors Act of 1940, 15 U.S.C. § 80b–15 for recission and restitution and denied any private cause of action under section 206 of the Act, 15 U.S.C. § 80b–6. *Cf., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982) (legislative intent to create an implied right of action under the Commodity Exchange Act established by Congress's failure to eliminate the implied private remedy while amending it in 1974 in the context of an implied private remedy having been routinely and consistently recognized by federal courts). As noted by the *Curran* Court, the emphasis in determining whether private rights of action should be implied shifted from an inquiry whether a statute was for the benefit of a special class, of which the claimant was a member, to an inquiry focusing on the intent of Congress in enacting the statute under review. *See Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

■ This court is persuaded by the Ninth Circuit decision in *Jablon v. Dean Witter & Co., supra.* In *Jablon,* the court noted that section 6(b) of the Securities Exchange Act, 15 U.S.C. § 78f(b), requires exchanges to adopt rules promoting "just and equitable principles of trade" but found no Congressional intent to provide a private action for violation of stock exchange rules in section 6(b). Similarly, with respect to the NASD rules, promulgated under section 15A(b)(6) of the Securities Exchange Act, 15 U.S.C. § 78*o*–3(6), there was no indication that Congress intended to create a private action. The court further noted that sections 9(e), 16(b), and 18 of the Securities Exchange Act explicitly provide private rights of action. Quoting *Touche Ross, supra,* the court observed "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *See also, Scharman v. E.F. Hutton & Company, Inc., supra.*

Furthermore, public policy concerns militate against implying private rights of action under the NYSE and NASD rules. The likely outcome of permitting civil damage actions for violations of such rules would be to discourage the stock exchange and the dealers association from promulgating rules for the protection of the investing public, an undesirable result.

I note that Count III and Count V of plaintiff's complaint state claims for violations of rule 10b–5 arising out of violations of the NASD rules and of the NYSE rules, respectively. No other allegations are made to support the 10b–5 violation other than the violation of these rules. Thus, Counts III and V do no more than state claims for violations of the rules themselves. Accordingly, summary judgment is granted as to Counts II, III, IV, and V of plaintiff's complaint.

■ In ruling as I do, I do not suggest that violations of NASD and NYSE rules may not be considered as evidence in support of plaintiff's other claims. The violations of these rules may be probative of plaintiff's claims under the antifraud provisions of the securities laws. *See, Miley v. Oppenheimer & Company, Inc.,* 637 F.2d 318 (5th Cir.1981). *See also, Mihara v. Dean Witter & Co., Inc.,* 619 F.2d 814, 824 (9th Cir.1980). A violation of the rules standing alone, however, does not give rise to a private cause of action.

Defendants also argue that plaintiff's sixth cause of action, based on "churning" (excessive trading to generate commissions), should be dismissed insofar as it states a claim under section 15 of the Exchange Act, under section 17 of the Securities Act, and under the NASD and NYSE rules. My earlier disposition of the questions of implied rights of action under these sections makes separate discussion of defendants' contentions unnecessary, and summary judgment will be granted only on the churning claims based on the NASD and NYSE rules.

■ Plaintiff's seventh cause of action alleges violations of provisions of the Michigan blue sky law, M.C.L.A. § 451.604(2) [sic: (a)(2)?] and M.C.L.A. § 451.810. Defendants move to dismiss the claim under section 451.604(a)(2) on the ground that this statutory provision alone confers no private

right of action. I agree. M.C.L.A. § 451.-604 (1982–83 Supp.) provides for the denial, suspension, or revocation of the registration of a broker-dealer, commodity issuer, agent, or investment adviser for several reasons including for failure to reasonably supervise its agents or employees. M.C.L.A. § 451.-604(a)(2). Under certain circumstances, the administrator (Michigan corporation and securities bureau, M.C.L.A. § 451.801(a)) may impose a civil penalty of One Thousand Dollars, M.C.L.A. § 451.604(g). M.C.L.A. § 451.604(h) provides: "A violation of a provision of section 204 or action of the administrator pursuant to section 204 shall not subject a registrant to civil liability to a customer of the registrant, except as that violation or action is contrary to another provision of this act." This language is unambiguous and precludes a private action based solely on M.C.L.A. § 451.604, even though the acts violating this section may violate a provision of the blue sky laws that confers a private right of action. Accordingly, plaintiff's claim under section 604 is stricken.

█ Plaintiff also seeks relief under M.C.L.A. § 451.810(a)(2) and (3), which permit recovery of the consideration paid for the security contract with interest, attorneys fees, or of damages against any person who:

> Offers or sells a security or commodity contract by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

M.C.L.A. § 451.810(a)(2). Defendants argue by analogy to section 12 of the 1933 Act, 15 U.S.C. § 77*l*, that plaintiff can recover only from a seller, not from a broker. The language of M.C.L.A. § 451.810(a)(1)–(3) is similar to the language of section 12, 15 U.S.C. § 77*l*.

While the interpretation Federal courts have placed upon terms under the Federal securities acts is not binding upon state courts, as they interpret the Uniform Securities Act, the similarity of the purpose and provisions of the state and Federal securities statutes ... cannot be ignored. Interpretation of one offers valuable guidelines as to the interpretation of the other.

*People v. Breckenridge,* 81 Mich.App. 6, 16–17, 263 N.W.2d 922, *leave denied,* 402 Mich. 915 (1978). Nevertheless, M.C.L.A. § 451.-810(b) provides:

> Every person who directly or indirectly controls a seller liable under subsection (a), every partner, officer, or director of such a seller, every person occupying a similar status or performing similar functions, every employee of such a seller who materially aids in the sale, *and every broker-dealer or agent who materially aids in the sale are also liable jointly and severally with and to the same extent as the seller,* unless the nonseller who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable.

(Emphasis added.) The statutory language clearly demonstrates an intent to create a cause of action against persons besides sellers, and in this respect, the federal courts' interpretation of the analogous federal provision is not appropriate. Accordingly, defendants' motion to dismiss the claim under M.C.L.A. § 451.810 is denied. Defendants' assertion of the *in pari delicto* doctrine is governed by my analysis earlier in this opinion.

Plaintiff's eighth cause of action seeks relief for common-law negligence. Specifically, plaintiff alleges negligent misrepresentation and negligence by defendant E.F. Hutton in failing to monitor plaintiff's account "in a manner so as to sufficiently safeguard the plaintiff and prevent the reckless diminution in value of plaintiffs

[sic] investments through the negligence, deceit and fraudulent activity of its employees." Complaint ¶ 51(b).

I find with respect to the acts of negligence asserted here that the Michigan blue sky law is plaintiff's exclusive remedy. Where the same act is alleged to violate the statutory provision and the common law, state law holds that the statutory remedy is the exclusive civil remedy. *Wickstrand v. Nelson,* 273 Mich. 393, 263 N.W. 404 (1935). *Barth v. Klicpera,* 248 Mich. 460, 227 N.W. 757 (1929).

Plaintiff cannot circumvent the exclusivity of the statutory remedy by alleging negligence rather than fraud. It would be anomalous to permit greater relief to a plaintiff alleging mere negligence than to one alleging fraud. *See Wickstrand v. Nelson, supra* 273 Mich. at 396–97, 263 N.W. 404. Accordingly, summary judgment is granted as to plaintiff's eighth cause of action.[7]

In his prayer for relief, plaintiff seeks to recover Seventy-Five Thousand and 00/100 Dollars ($75,000.00) as compensatory damages, Eight Hundred Fifty Thousand and 00/100 Dollars ($850,000.00) as additional exemplary and compensatory damages, attorneys fees, costs and interest. Defendants argue that plaintiff is not entitled to recover exemplary or punitive damages or attorneys fees. With respect to the recovery of exemplary or punitive damages, plaintiff relies on the federal and state securities laws, negligence and fraud. Since I have already ruled that there can be no recovery under theories of common-law negligence or fraud as the Michigan blue sky law is plaintiff's exclusive state law remedy for the alleged acts of the defendants, the inquiry is narrowed to the question whether there is recovery for exemplary damages under the federal or Michigan securities laws.

Plaintiff's federal claims are for violations of section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), of sections 10(b) and 15(c) of the 1934 Act, 15 U.S.C. §§ 78j(b) and 78o(c), respectively, and of rule 10b–5. Section 28(a) of the 1934 Act, 15 U.S.C. § 78bb(a), provides:

> The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity; but no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of. Nothing in this chapter shall affect the jurisdiction of the securities commission (or any agency or officer performing like functions) of any State over any security or any person insofar as it does not conflict with the provisions of this chapter or the rules and regulations thereunder.

This statutory provision precludes recovery of exemplary or punitive damages under sections 10(b) and 15(c) of the 1934 Act, *Globus v. Law Research Service,* 418 F.2d 1276 (2d Cir.1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), and under rule 10b–5, *Huddleston v. Herman & MacLean,* 640 F.2d 534 (5th Cir.1981), *aff'd in part, rev'd in part,* —— U.S. ——, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *DeHass v. Empire Petroleum Co.,* 435 F.2d 1223 (10th Cir. 1970). Furthermore, even if I were to find an implied private right of action under section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a), the clear weight of authority is that punitive damages are not recoverable under this section. *Globus v. Law Research Service, Inc., supra* at 1286 ("[C]ourts have endeavored to treat the '33 and '34 Acts *in pari materia* and to construe them as a

---

7. Although plaintiff does not have a common-law negligence basis for recovery against E.F. Hutton for negligent supervision, there may be recovery under a "controlling person" theory. Securities and Exchange Act, § 20, 15 U.S.C. § 78t; M.C.L.A. § 451.810(b). *See, e.g., Henricksen v. Henricksen,* 640 F.2d 880 (7th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981). See discussion, *infra.*

single comprehensive scheme of regulation."). *See also, DeHass v. Empire Petroleum Co., supra* at 1229 n. 4; *Flaks v. Koegel,* 504 F.2d 702 (2d Cir.1974). *Cf., Greitzer v. United States National Bank,* 326 F.Supp. 762 (S.D.Cal.1971) (no recovery of damages for mental distress under federal securities acts).

■■■ Exemplary or punitive damages may be recovered, however, if plaintiff has stated a common-law fraud claim and state law permits recovery of such damages. *See, e.g., Flaks v. Koegel, supra* at 706–07; *Savino v. E.F. Hutton & Co., Inc.,* 507 F.Supp. 1225 (S.D.N.Y.1981). Nevertheless, I have already held that the Michigan blue sky law is plaintiff's exclusive remedy under Michigan law. Under the applicable Michigan statute, M.C.L.A. § 451.810(a)(3), plaintiff can recover:

> the consideration paid for the security or commodity contract, together with interest at 6% per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security or commodity contract, upon the tender of the security or commodity contract, or for damages if he no longer owns the security or commodity contract. Damages are the amount that would be recoverable upon a tender less the value of the security or commodity contract when the buyer disposed of it and interest at 6% per year from the date of disposition.

■■■ This statutory language makes clear that plaintiff can recover only his actual damages, measured as the difference between the amounts paid for the security and the amount received upon a tender of the security. Thus, I find that there is no basis in the federal or state security laws that would permit plaintiff to recover exemplary or punitive damages for defendants' alleged misconduct, and accordingly, plaintiff's prayer for exemplary damages is hereby stricken.

With respect to attorneys fees, I note that M.C.L.A. § 451.810(a)(3) specifically permits the recovery of reasonable attorneys fees. Therefore, I do not need to address the attorneys fees issue with respect to the federal securities law, and defendants' motion for summary judgment is denied with respect to this claim.

Finally, defendant E.F. Hutton & Company seeks dismissal of all counts against it. Plaintiff's claims against this defendant are based on section 20 of the 1934 Act, 15 U.S.C. § 78t, as a co-conspirator or controlling person (Complaint paragraph 9). Plaintiff also alleges that E.F. Hutton violated M.C.L.A. §§ 451.810 and 451.604(a)(2). Conduct violative of the federal securities laws is alleged to have been committed directly by defendant E.F. Hutton only in plaintiff's second, third, fourth, and fifth causes of action, counts which have been dismissed earlier in this opinion. Further, I have already held that there is not an implied private right of action under M.C.L.A. § 451.604(a)(2). Plaintiff also alleges that E.F. Hutton negligently and recklessly failed to monitor plaintiff's account, under a common-law negligence theory, a theory which I have already held is not viable as the Michigan blue sky law is plaintiff's exclusive remedy under state law. Thus, the only viable claims pled by plaintiff against E.F. Hutton are under 15 U.S.C. § 78t and M.C.L.A. § 451.810.

Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a) provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

M.C.L.A. § 451.810(b), *supra,* also has a controlling person provision.

Defendant argues that through the affidavit of Dennis J. Mooradian, branch officer manager of the Detroit office of E.F. Hutton & Company, it has established good faith as a matter of law. Plaintiff responds that defendant E.F. Hutton has derivative

liability under the doctrine of respondeat superior and also that E.F. Hutton is liable under section 15 of the 1933 Act and under section 20 of the 1934 Act. Initially, I note that liability under section 15 of the 1933 Act, 15 U.S.C. § 77o, was not pled in the complaint. Furthermore, this provision applies only to violations of 15 U.S.C. §§ 77k and 77l, sections 11 and 12 of this 1933 Act, and as there has been no allegation of any violation of these sections, it is clearly inapplicable.

With respect to respondeat superior, defendant argues that plaintiff is limited to recovery under the controlling person provision, 15 U.S.C. § 78t. Defendant recognizes that its position is contrary to the holding in *Holloway v. Howerdd,* 536 F.2d 690 (6th Cir.1976), but argues that this Sixth Circuit decision was implicitly overruled in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). I disagree.

 *Ernst & Ernst* did not involve a claim of vicarious liability, but rather was a situation in which liability was sought to be imposed directly on the accounting firm. Scienter was held to be a necessary element of the section 10(b) and rule 10b–5 claim and, as Ernst & Ernst was the party alleged to be primarily liable, only its conduct could satisfy this element. Respondeat superior does not do away with the requirement of scienter. Rather, the agent must be found to have acted with scienter, and the conduct of the agent is imputed to the principal party. Here the conduct of defendant William Phillips, the controlled person, allegedly violative of the federal and Michigan securities laws, is sought to be imputed to E.F. Hutton, the controlling person.

In *Sharp v. Coopers & Lybrand,* 649 F.2d 175 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648, the argument was made that the *Ernst & Ernst* decision precluded secondary liability under a theory of respondeat superior. The Third Circuit rejected this argument holding:

[T]he absence of actual knowledge of or reckless disregard for material omissions or misrepresentations should not insulate Coopers & Lybrand (accounting firm) from liability because the expectation that investment decisions would be made on the basis of the opinion letter required the firm to exercise a "stringent duty to supervise" its employees in drafting and issuing the letter.

*Id.* at 184. Other cases decided subsequent to *Ernst & Ernst v. Hochfelder* continue to apply the doctrine of respondeat superior and have held that this theory of recovery is independent of liability under the controlling person provision. *See Henricksen v. Henricksen,* 640 F.2d 880 (7th Cir.), *cert. denied,* 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 637 (1981); *Paul F. Newton & Company v. Texas Commerce Bank,* 630 F.2d 1111 (5th Cir.1980); *Marbury Management, Inc. v. Kohn,* 629 F.2d 705 (2d Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 566, 66 L.Ed.2d 469 (1980). *Contra, Christoffel v. E.F. Hutton & Company, Inc.,* 588 F.2d 665 (9th Cir.1978).

 I conclude from these cases that the *Ernst & Ernst* decision does not preclude recovery under the theory of respondeat superior and that the Sixth Circuit's position in *Holloway v. Howerdd, supra,* is still binding on this court.

 With respect to section 20 of the 1934 Act, 15 U.S.C. § 78t, defendant argues that it has established good faith as a matter of law through the submission of an affidavit.[8] Defendant has the burden of establishing good faith. *Paul F. Newton & Company v. Texas Commerce Bank, supra; Marbury Management, Inc. v. Kohn, supra.* A brokerage house defendant must show that it has not been negligent in supervision and that it has maintained and enforced a reasonable and proper system of supervision and internal control over sales personnel. *Marbury Management, Inc., supra* at 716. I have reviewed the Mooradian affidavit sub-

---

**8.** Although defendant has not referred to M.C. L.A. § 451.810(b), this section creates a defense for a nonseller "who did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist."

448

mitted in this case, and at this time, I am not prepared to rule on the basis of this affidavit alone that defendant E.F. Hutton has carried the burden of showing good faith. The affidavit merely raises a question of fact to be determined at trial. *See Lorenz v. Watson,* 258 F.Supp. 724 (E.D.Pa. 1966).

Accordingly, for the reasons set forth above, defendant E.F. Hutton's motion for summary judgment is hereby denied in part and granted in part.

IT IS SO ORDERED.