John SCHICK, Jr., et al., Plaintiffs,

v.

Herbert STEIGER, Defendant.

Civ. No. 83–0474.

United States District Court, E.D. Michigan, S.D.

March 23, 1984.

Wilber M. Brucker and Wayne Wegner,
Detroit, Mich., for plaintiffs.

Grady Avant, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

RALPH M. FREEMAN, Senior District Judge.

This motion for summary judgment, brought by the defendant, raises an important issue in the area of securities regulation. The question is whether a person who gives misleading information to investors may assert the defense of *in pari delicto* in an action for fraud brought by the investors because the investors believed they were receiving material nonpublic information and traded upon such information without disclosure.

The facts, as adduced from the pleadings, need be stated only generally for purposes of this motion. Plaintiffs and defendant are fellow investors in securities who became acquainted while frequenting the brokerage offices of Smith Hague & Co. The parties often discussed the activities of the stock market. During the course of these discussions, in December 1981, defendant claimed to have inside information of an imminent takeover offer for the stock of Cross & Trecker Corporation, a Michigan based corporation whose stock is traded over-the-counter. Defendant claimed to have obtained this information from a member of Cross & Trecker's founding family. He represented that the takeover offer, which he said would be announced to the public on December 14, 1981, was to be at about $42 a share while Cross & Trecker stock was then trading at about $22 a share. Plaintiffs purchased Cross & Trecker stock in reliance upon the representations made by the defendant. The takeover offer, however, was never made. When no announcement was made the week of December 14, 1981, defendant told the plaintiffs that there was a delay in the announcement, but that he would get more inside information and advise plaintiffs of the new announcement date.

In February 1982, defendant again purported to have inside information of an imminent takeover offer for Cross & Trecker. He told plaintiffs that a public announcement would be made on February 22, 1982, and that the takeover offer was again to be at $42 a share. Plaintiffs purchased more stock in reliance upon defendant's representations, but once again the announcement was not made. For the next several months until May 1982, defendant continued to assure plaintiffs that a takeover offer was forthcoming and plaintiffs continued to buy and sell in reliance upon such assurances. In early May 1982, defendant finally told plaintiffs they were "on their own."

Plaintiffs allege that defendant mislead them because he had already made large purchases of Cross & Trecker stock and hoped that the purchases by plaintiffs would cause the price of Cross & Trecker stock to rise. The market price of Cross & Trecker stock rose for a short period, but plummeted to a low of $13 a share during the following months. Plaintiffs sold their shares after the takeover failed to materialize; some realized gains on their sales, and some incurred losses.

Plaintiffs brought this action under the Securities Exchange Act of 1934. Count I of their complaint alleges that defendant defrauded plaintiffs in violation of Section 10(b) of the Act, 15 U.S.C. § 78j(b),[1] and Rule 10b–5 promulgated thereunder, 17 CFR § 240.10b–5.[2] Count II of their

---

1. Section 10(b) provides:

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest.

 15 U.S.C. § 78j(b).

2. Rule 10b–5 provides:

 It shall be unlawful for any person, directly or indirectly, by the use of any means or

complaint alleges common law fraud under the law of Michigan. Defendant brought this motion for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that the defense of *in pari delicto* bars all claims against defendant. Defendant alternatively argues that plaintiffs did not rely upon defendant's misrepresentations and, therefore, cannot recover. The parties have submitted excellent briefs in support of their respective positions, and plaintiffs have also submitted affidavits in opposition to defendant's motion. In a motion for summary judgment, the court must, of course, view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Watkins v. Northwestern Ohio Tractor Pullers Ass'n*, 630 F.2d 1155, 1158 (6th Cir.1980).

*In Pari Delicto*

■■■ The defense of *in pari delicto* bars a suit at law or equity where the party seeking relief is himself involved in the wrongdoing. "Although *in pari delicto* literally means 'of equal fault,' the doctrine has been applied, correctly or incorrectly, in a wide variety of situations in which a plaintiff seeking damages or equitable relief is himself involved in some of the same sort of wrongdoing." [3] It is derived from the broader equitable defense of unclean hands.[4] The doctrine is only applied where the wrongdoing of the party seeking relief is necessarily related to the claim brought before the court.[5] And proper application of the doctrine requires that the fault or guilt of the parties be approximately equal.[6]

Although the *in pari delicto* doctrine "has proved simple enough in purely private disputes between private parties, ... the legislative adoption of comprehensive regulatory schemes, such as the federal securities laws, designed at least in part for the very purpose of aiding and protecting injured plaintiffs, has complicated matters." [7] In *Perma Life Mufflers, Inc. v. International Parts Corp.*, the Supreme Court held that the doctrine of *in pari delicto* is not a defense to an antitrust action.[8] Justice Black, writing for the

---

instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b–5 (1983).

**3.** *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 138, 88 S.Ct. 1981, 1984, 20 L.Ed.2d 982 (1968) (Black, J.).

**4.** "The principle that a wrongdoer shall not be permitted to profit through his own wrongdoing is fundamental in our jurisprudence. The traditional doctrine of *in pari delicto* is itself firmly based on this principle." *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. at 151, 88 S.Ct. at 1990–91 (Marshall, J., concurring).

**5.** *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933). In *Conard v. Nicoll* it was stated:

If the person against whom fraud is alleged should be proved to have been guilty of it in any number of instances, still, if the particular act sought to be avoided be not shown to be tainted with fraud, it cannot be affected with the other frauds, unless in some way or other it be connected with or form a part of them.

29 U.S. (4 Pet.) 292, 297, 7 L.Ed. 862 (1830). For a stricter view of this requirement, see *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. at 153, 88 S.Ct. at 1992 ("Plaintiffs who are truly *in pari delicto* are those who have themselves violated the law in cooperation with the defendant.") (Harlan, J., concurring and dissenting) (citing *Williams v. Hedley*, 103 Eng.Rep. 388, 389).

**6.** "If the fault of the parties is reasonably within the same scale—if the '*delictum*' is approximately '*par*'—then the doctrine should bar recovery." *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. at 147, 88 S.Ct. at 1989 (Fortas, J., concurring).

**7.** *Weitzman v. Stein*, 436 F.Supp. 895, 905 (S.D. N.Y.1977).

**8.** *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134, 140, 88 S.Ct. 1981, 1985, 20 L.Ed.2d 982 (1968). There was no majority

Court, stated: "We have often indicated the inappropriateness of invoking broad common law barriers to relief where a private suit serves important public purposes."[9] In the area of federal securities regulation, however, courts have reached diverse results in considering the extent to which the *in pari delicto* defense applies to private actions brought under the federal securities laws.[10]

Defendant argues that *in pari delicto* bars the plaintiffs from recovery in this case because they traded in Cross & Trecker stock in the belief that they possessed material, nonpublic information, i.e., inside information. In other words, defendant argues that *in pari delicto* should be a defense in a tippee's suit against a tipper arising from a false tip. Plaintiffs respond with two arguments. First, they argue that the parties are not of equal fault, so the defense, by its own terms, does not apply. Second, plaintiffs urge this court to follow the courts in the Second and Eighth Circuits which have refused to apply *in pari delicto* to tipper-tippee suits under section 10(b) and rule 10b–5. Both parties recognize that there is a split among the circuits on this issue and only one relevant case reported from this circuit.[11]

In view of *Perma Life*, the court must make a two-part inquiry.[12] First, does *in pari delicto* in its traditional formulation apply to a fraud case such as this? To decide this question, the court must determine whether the parties have committed approximately equal wrongs which resulted in damage to plaintiffs. If the parties are found to be equally at fault, the second question is whether application of *in pari delicto* is consistent with the regulatory scheme of the federal securities laws.

Defendant Steiger is alleged to have intentionally given plaintiffs false and misleading information in order to encourage them to purchase Cross & Trecker stock on the open market. Defendant did so as a fellow investor; defendant was not a corporate insider, nor was he a broker. Steiger claimed to be a tippee of the misleading information which he gave to plaintiffs.[13] The alleged conduct of defendant nevertheless is clearly of the type prohibited by section 10(b) and rule 10b–5.[14]

Defendant argues that plaintiffs likewise violated section 10(b) and rule 10b–5 by trading on the purportedly inside information without disclosure. Defendant cites several cases where such trading by plaintiffs, held to be illegal, barred the plaintiffs' subsequent private actions because it put them *in pari delicto* with the defendants.[15] Those cases, however, were decided on the assumption that tippees, merely because they possess nonpublic material

---

opinion in *Perma Life*. The case produced five opinions, with Justice Black authoring the lead opinion.

**9.** *Id.* at 138, 88 S.Ct. at 1984.

**10.** *See* Annot., 26 A.L.R.Fed. 682 (1976).

**11.** *Kirkland v. E.F. Hutton and Co., Inc.,* 564 F.Supp. 427 (E.D.Mich.1983). In *Kirkland,* Judge Boyle held that *in pari delicto* is applicable, under proper facts, to suits brought under section 10(b). *Id.* at 436. Judge Boyle went on to hold that summary judgment could not be granted on the basis of *in pari delicto* in that case because there remained issues of material fact as to the relative fault of the parties and the scienter attributable to the plaintiff. *Id.* at 437. Both parties, apparently agreeing on the material facts, urge this court to go beyond *Kirkland* and decide at this stage of the litigation whether, as a matter of law, *in pari delicto* is available as a defense. This court agrees that the issues raised by the parties are properly decided on a motion for summary judgment. *See Tarasi v. Pittsburgh National Bank,* 555 F.2d 1152 (3d Cir.1977); *Kuehnert v. Texstar Corp.,* 412 F.2d 700 (5th Cir.1969).

**12.** *See* Comment, *Availability of an* In Pari Delicto *Defense in Rule 10b–5 Tippee Suits,* 77 Colum.L.Rev. 1084, 1091 (1977).

**13.** This case is not a true tipper-tippee controversy, therefore, but a tippee-tippee case.

**14.** *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 197–201, 96 S.Ct. 1375, 1382–1384, 47 L.Ed.2d 668 (1976).

**15.** *Tarasi v. Pittsburgh National Bank,* 555 F.2d 1152 (3d Cir.), *cert. denied,* 434 U.S. 965, 98 S.Ct. 504, 54 L.Ed.2d 451 (1977); *Malamphy v. RealTex Enterprises, Inc.,* 527 F.2d 978 (4th Cir. 1975); *Kuehnert v. Texstar Corp.,* 412 F.2d 700 (5th Cir.1969).

information, are "under an obligation either to make full disclosure before engaging in transactions on the open market or to refrain from trading until such information [is] made public."[16] The Supreme Court's recent decisions in *Dirks v. SEC*[17] and *Chiarella v. United States*,[18] however, expressly reject such a broad view of tippee liability under section 10(b) and rule 10b–5.

In *Dirks v. SEC*, a corporate insider disclosed inside information about a fraud to Dirks, a stock analyst employed by a broker-dealer. Dirks disclosed the fraud to select clients and investors, some of whom sold their holdings in the corporation. The fraud was later made public and the corporation went into receivership. The SEC censured Dirks for violating section 10(b) and rule 10b–5 by repeating the material inside information to some investors who later sold on the basis of the information.[19] Dirks sought review in the United States Court of Appeals for the District of Columbia Circuit, which upheld the SEC's decision.[20] Writing for the majority, Judge Wright concluded that the insider's duty to disclose material nonpublic information or refrain from trading passed "to all those to whom they disclose their information be-

fore it has been disseminated to the public at large."[21] The Supreme Court reversed the District of Columbia Circuit and took "still another step to limit protections provided investors by § 10(b) of the Securities Exchange Act of 1934."[22]

■ The Supreme Court held that a tippee who knowingly receives material nonpublic information from a corporate insider has a duty to disclose before trading only where the *insider* intended to personally gain from the disclosure and the resulting transaction.[23] A duty to disclose under section 10(b) arises not from the mere possession of nonpublic market information, but from the existence of a fiduciary relationship.[24] Corporate insiders are in a fiduciary relationship with shareholders and have a duty to the shareholders to either disclose material nonpublic information or to abstain from trading altogether.[25] This duty is based on the unfairness of allowing insiders to personally benefit from information intended to be available only for a corporate purpose. Not all breaches of fiduciary duty in connection with a securities transaction, however, are prohibited by section 10(b) and rule 10b–5. An insider will violate section 10(b) and rule 10b–5

**16.** *Tarasi v. Pittsburgh National Bank*, 555 F.2d at 1161 (citing *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228 (2d Cir. 1974); *SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 848 (2d Cir.1968), *cert. denied sub nom. Kline v. SEC*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969); *Ross v. Licht*, 263 F.Supp. 395, 410 (S.D.N.Y.1967)). *See also Kuehnert v. Texstar Corp.*, 412 F.2d at 702.

**17.** —— U.S. ——, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983).

**18.** 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980).

**19.** The SEC concluded: "Where 'tippees'—regardless of their motivation or occupation—come into possession of material 'information that they know is confidential and know or should know came from a corporate insider,' they must either publicly disclose that information or refrain from trading." 21 S.E.C. Docket 1401, 1407 (1981) (footnote omitted) (quoting *Chiarella v. United States*, 445 U.S. 222, 230 n. 12, 100 S.Ct. 1108, 1116 n. 12, 63 L.Ed.2d 348 (1980)).

*Dirks v. SEC*, —— U.S. at ——, 103 S.Ct. at 3259.

**20.** 681 F.2d 824 (D.C.Cir.1982).

**21.** *Id.* at 839. Judge Wright further concluded that Dirks, as an employee of a broker-dealer, had violated completely independent "obligations to the SEC and to the public." *Id.* at 840.

**22.** *Dirks v. SEC*, —— U.S. at ——, 103 S.Ct. at 3268 (Blackmun, J., dissenting) (footnote omitted).

**23.** *Id.* at ——, 103 S.Ct. at 3265.

**24.** *Id.* at ——, 103 S.Ct. at 3261. The SEC's theory "that anyone who knowingly receives nonpublic material information from an insider has a fiduciary duty to disclose before trading ... conflicts with the principle set forth in *Chiarella* that only some persons, under some circumstances, will be barred from trading while in possession of material non-public information." *Id.* at ——, 103 S.Ct. at 3262.

**25.** *In re Cady, Roberts & Co.*, 40 S.E.C. 907, 911 (1961).

only where he fails to disclose material nonpublic information before trading on it and intends thereby to personally benefit.[26]

The tippee's duty to disclose or abstain is derived from the insider's duty.[27] "[A] tippee assumes a fiduciary duty to the shareholders of a corporation not to trade on material nonpublic information only when the insider has breached his fiduciary duty to the shareholders by disclosing the information to the tippee and the tippee knows or should know that there has been a breach."[28] Whether disclosure is a breach of duty depends on the insider's purpose in making the disclosure.[29] As stated by the Supreme Court: "[T]he test is whether the insider personally will benefit, directly or indirectly, from his disclosure. Absent some personal gain, there has been no breach of duty to stockholders. And absent a breach by the insider, there is no derivative breach."[30] The Court then gave a few examples where a breach of duty by an insider may be inferred from the objective facts and circumstances. The Court stated: "The elements of fiduciary duty and exploitation of nonpublic information ... exist when an insider makes a gift of confidential information to a trading relative or friend. The tip and trade resemble trading by the insider himself followed by a gift of the profits to the recipient."[31]

This court must apply these principles in evaluating the conduct of the plaintiffs in the present case. In evaluating their conduct, the court will assume the facts as the plaintiffs thought them to be when engaging in their allegedly wrongful conduct, for there is no difference in substance between a successful fraud and an attempt.[32]

Plaintiffs believed that defendant had received a tip from Terry Cross, a stock broker and member of Cross & Trecker's founding family. Defendant claimed to have a "close relationship" with Cross, which can be assumed to have been a friendship. Assuming that Cross disclosed the impending takeover offer to defendant as a friendly gift of confidential information, *Dirks* clearly imposed on defendant the duty to disclose or abstain from trading.[33] It is not so clear, however, that *Dirks* imposed on defendant the duty not to selectively disclose the information. In the framework of the *Dirks* case, plaintiffs here occupy the same position as did Dirks' clients and investors to whom Dirks disclosed the allegations of fraud. They are one step removed from the insider. There is no allegation that Cross, the insider, had any intention that defendant would disclose information of the takeover offer to still other traders. Nor did Cross have anything to gain personally from such further disclosure. There is no evidence that any kind of relationship existed between Cross and plaintiffs. As to plaintiffs, this is not a case of an insider attempting to do by others what it is unlawful for him to do himself.[34] Thus, plaintiffs did not acquire the insider's duty to disclose or refrain from trading. Such a duty cannot be im-

---

**26.** *Dirks v. SEC,* —— U.S. at ——, 103 S.Ct. at 3261.

**27.** *Id.* at ——, 103 S.Ct. at 3264. The Supreme Court noted in *Chiarella* that "[t]he tippee's obligation has been viewed as arising from his role as a participant after the fact in the insider's breach of a fiduciary duty." *Chiarella v. United States,* 445 U.S. 222, 230 n. 12, 100 S.Ct. 1108, 1116 n. 12, 63 L.Ed.2d 348 (1980).

**28.** *Dirks v. SEC,* —— U.S. at ——, 103 S.Ct. at 3264.

**29.** *Id.* at ——, 103 S.Ct. at 3265.

**30.** *Id.*

**31.** *Id.* at ——, 103 S.Ct. at 3266.

**32.** *Kuehnert v. Texstar Corp.,* 412 F.2d 700, 704 (5th Cir.1969). In *Kuehnert,* the Fifth Circuit held that this approach is proper because (1) the statutory phrase "any manipulative or deceptive device," 15 USC § 78j(b), seems broad enough to encompass conduct regardless of its outcome, and (2) in determining whether a plaintiff's hands were unclean, equity has customarily looked to intent.

**33.** *See supra* text accompanying note 31.

**34.** *See* 15 U.S.C. § 78t(b) (making it unlawful to do indirectly "by means of any other person" any act made unlawful by the federal securities laws).

posed on plaintiffs merely because they knowingly received material nonpublic information and traded upon it. Plaintiffs simply were not "participant[s] after the fact in [an] insider's breach of a fiduciary duty." [35] There is no general duty to forego market transactions based on material nonpublic information.[36] Nor do the antifraud provisions of the federal securities laws require equal information among all traders.[37]

 On the facts before the court, it has not been established that plaintiffs violated section 10(b) or rule 10b–5 by attempting to trade on material nonpublic information. Balanced against the alleged misconduct of defendant, which clearly violates the law if proved, plaintiffs cannot be said to be equally at fault for their losses. Thus, *in pari delicto* by its own terms is inapplicable in this case. The court must exercise its discretion and deny the defense. Having so decided, the court need not reach the issue of whether application of *in pari delicto* would be consistent with the regulatory scheme of the federal securities laws.

*Reliance*

Defendant argues that plaintiffs cannot prove that they relied upon the alleged misrepresentations, a necessary element of an action under section 10(b) of the Act and rule 10b–5. Defendant's argument is based on the fact that plaintiffs allege in their complaint that some plaintiffs were selling their Cross & Trecker stock at the same time that defendant was advising them to buy and retain the stock. *See* First Amended Complaint, ¶¶ 11, 12, and 13. Therefore, defendant argues, plaintiffs

were not relying upon the information and advice they allege defendant was giving them.

Plaintiffs argue that they relied upon the misrepresentations when they purchased the Cross & Trecker stock and that this reliance is not negated by the fact that some plaintiffs sold the stock in an effort to mitigate their losses.

 Reliance is a necessary element of a private cause of action under section 10(b) and rule 10b–5.[38] The element of reliance requires proof that the misrepresentation actually induced the plaintiff to act differently than he would have acted in his investment decision.[39]

 Plaintiffs allege in their pleadings and affidavits that they relied upon the misrepresentations of the defendant in that they would not have purchased Cross & Trecker stock but for defendant's advice and their belief in it. Accepting plaintiffs' allegations as true, as the court is bound to do on this motion for summary judgment,[40] the court cannot accept defendant's argument that plaintiffs cannot establish that they relied upon the alleged misrepresentations of the defendant. The court holds, therefore, that there is a genuine issue of material fact on the issue of reliance.

*Conclusion*

The court concludes that the defense of *in pari delicto* does not apply in this case. The court further concludes that there is a genuine issue of material fact on the issue of plaintiffs' reliance. For these reasons, defendant's motion for summary judgment will be denied.

An order shall be submitted accordingly.

---

**35.** *Chiarella v. United States,* 445 U.S. 222, 230 n. 12, 100 S.Ct. 1108, 1116 n. 12, 63 L.Ed.2d 348.

**36.** *Id.* at 233, 100 S.Ct. at 1117.

**37.** *Dirks v. SEC,* — U.S. at —, 103 S.Ct. at 3262.

**38.** *Chelsea Associates v. Rapanos,* 527 F.2d 1266, 1271 (6th Cir.1975); *National Bank of Detroit v. Whitehead,* 528 F.Supp. 940, 949 (E.D.Mich. 1981).

**39.** *Vervaecke v. Chiles, Heider & Co.,* 578 F.2d 713, 715–16 (8th Cir.1978) (quoting *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040, 1048 (8th Cir. 1977), *cert. denied,* 435 U.S. 925, 98 S.Ct. 1490, 55 L.Ed.2d 519 (1978)).

**40.** *See Day v. UAW,* 466 F.2d 83, 86 (6th Cir. 1972).